UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| INSTITUTE FOR ENERGY RESEARCH,<br><br>  Plaintiff,<br><br>  v.<br><br>FEDERAL ENERGY REGULATORY COMMISSION,<br><br>  Defendant. | Consolidated<br>Civ. A. Nos. 22-2756, 22-3419 (CKK) |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM IN SUPPORT THEREOF**

**<u>TABLE OF CONTENTS</u>**

# Contents

BACKGROUND ................................................................................................................. 1

    I.     Request FOIA-2022-0072 ................................................................................. 2

    II.    Request FOIA-2022-0085 ................................................................................. 3

LEGAL STANDARD ........................................................................................................ 4

ARGUMENT ..................................................................................................................... 5

    I.     Defendant Properly Applied FOIA Exemption 5 .......................................... 5

        A.     Defendant Properly Invoked the Deliberative Process Privilege ............... 7

        B.     Defendant Properly Invoked the Attorney Work Product Doctrine ......... 11

    II.    Defendant Properly Applied FOIA Exemption 6's Personal Privacy Privilege ... 12

    III.   Defendant Released All Reasonably Segregable Information. ............................ 14

CONCLUSION ................................................................................................................. 15

## **TABLE OF AUTHORITIES**

**Cases**

*Amiri v. Nat'l Sci. Found.*, Civ. A. No. 20-2006 (TNM), 2021 WL 4438910 (D.D.C. Sept. 28, 2021) ................................................................................................................................ 14

*Amiri v. Nat'l Sci. Found.*, Civ. A. No. 20-2006 (TNM), 2021 WL 4438910 (D.D.C. Sept. 28, 2021) ................................................................................................................................ 14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................ 4

*Armstrong v. Exec. Off. of the President*, 97 F.3d 575 (D.C. Cir. 1996) ...................................... 15

*Brayton v. Off. of U.S. Trade Rep.*, 641 F.3d 521 (D.C. Cir. 2011) ............................... 4

*Canning v. Dep't of Just.*, 567 F. Supp. 2d 104 (D.D.C. 2008) ..................................... 15

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................ 4

*Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114 (D.D.C. 1984) ........... 8

*Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Labor*, 478 F. Supp. 2d 77 (D.D.C. 2007) ................................................................................................................................ 5, 6

*Citizens for Responsibility & Ethics v. Nat'l Archives & Records Admin.*, 583 F. Supp. 2d 146 (D.D.C. 2008*)* ................................................................................................................ 12

*Cleveland v. United States*, 128 F. Supp. 3d 284 (D.D.C. 2015) ..................................... 7

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980) ..................... 7, 8, 11

*CREW v. Dep't of Homeland Sec.*, 648 F. Supp. 2d 152 (D.D.C. 2009) ....................................... 8

*Dep't of Def. v. Fed. Labor Relations Auth. ("FLRA")*, 510 U.S. 487 (1994) ............................. 5

*Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001) ........................... 7

*Dep't of Just. v. Tax Analysts*, 492 U.S. 136 (1989) ................................................ 5

*Dep't of State v. Wash. Post Co.*, 456 U.S. 595 (1982) ................................................ 13

*FPL Grp. Inc. v. IRS*, 698 F. Supp. 2d 66  (D.D.C. 2010) .............................................. 8

*Heggestad v. Dep't of Just.,* 182 F. Supp. 2d 1 (D.D.C. 2000) .................................... 11

*Hickman v. Taylor*, 329 U.S. 495 (1947) ...................................................................... 11

*Jud. Watch, Inc. v. Dep't of Just.*, 20 F.4th 49  (D.C. Cir. 2021) ................................. 7

*Jud. Watch, Inc. v. Dep't of Just.,* 432 F.3d 366 (D.C. Cir. 2005) ................................ 11

*Jud. Watch, Inc. v. FDA*, 449 F.3d 141 (D.C. Cir. 2006) .............................................. 13

*Larson v. Dep't of State*, 565 F.3d 857 (D.C. Cir. 2009)................................................ 5

*Mapother v. Dep't of Just.,* 3 F.3d 1533 (D.C. Cir. 1993)............................................... 7

*McCutchen v. Dep't of Health & Human Servs.*, 30 F.3d 183 (D.C. Cir. 1994) ........................ 5

*McGehee v. CIA*, 697 F.2d 1095 (D.C. Cir. 1983) ........................................................ 4

*Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242 (D.C. Cir. 1977)...................... 6, 15

*Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131 (D.D.C. 2011) .................................. 4, 5

*Mil. Audit Project v. Casey*, 656 F.2d 724 (D.C. Cir. 1981) ...................................... 5, 6

*Nat'l Ass'n of Home Buyers v. Norton*, 309 F.3d 26 (D.C. Cir. 2002)......................................... 12

*Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873 (D.C. Cir. 1989) ........................... 13

*Nat'l Treas. Emps. Union v. U.S. Customs Serv.*, 802 F.2d 525 (D.C. Cir. 1986) .................... 5, 6

*NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975)................................................... 6, 8

*Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429 (D.C. Cir. 1992) ............................ 7, 8

*Pub. Citizen Health Rsch. Grp. v. FDA*, 185 F.3d 898 (D.C. Cir. 1999)........................................ 5

*Reed v. NLRB*, 927 F.2d 1249 (D.C. Cir. 1991) ................................................... 13, 14

*Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350 (D.C. Cir. 2021)..................... 7, 8, 10

*Rockwell Int'l Corp. v. Dep't of Just.*, 235 F.3d 598 (D.C. Cir. 2001)........................................ 6

*SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991) .................................... 5

*Schiller v. NLRB*, 964 F.2d 1205 (D.C. Cir. 1992) ........................................................................ 12

*Spirko v. U.S. Postal Serv.*, 147 F.3d 992 (D.C. Cir. 1998) ........................................................... 6

*Stonehill v. United States DOJ Tax Div.*, Civil Action No. 1:19-cv-03770, 2022 U.S. Dist. LEXIS
    24285 (D.D.C. Feb. 10, 2022) ................................................................................................. 13

*Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106 (D.C. Cir. 2007) ................................................ 15

*Tax Analysts v. IRS*, 117 F.3d 607 (D.C.Cir.1997) ..................................................................... 11

*Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) .......................................................................... 6

*Wolf v. CIA*, 473 F.3d 370 (D.C. Cir. 2007) ................................................................................. 5

## Statutes

5 U.S.C. § 552(a)(8)(A)(i)(I) ......................................................................................................... 10

5 U.S.C. § 552(b) .................................................................................................................... 5, 6, 12

5 U.S.C. § 552(b)(6) ..................................................................................................................... 11

5 U.S.C. § 552(f) ...................................................................................................................... 6, 10

## Rules

Fed. R. Civ. P. 56(a) ...................................................................................................................... 4

## <u>LIST OF EXHIBITS</u>

1. Declaration of Carolyn Templeton

2. Exhibit A to Declaration of Carolyn Templeton, *Vaughn* Index

The only issues in these Freedom of Information Act ("FOIA") cases are whether the Federal Energy Regulatory Commission ("FERC") lawfully redacted information under Exemption 5 and 6 in its response to two separate but overlapping FOIA requests from Plaintiff Institute for Energy Research.[1]

Plaintiff sought records related to communications between FERC and the White House. Many of the responsive records concerned discussions between the agency and White House staff, conveying employees' thoughts, impressions, and recommendations regarding FERC's eventual decisions on responsiveness and legal exemptions to apply to FOIA requests. Additionally, these records contained personal identifying information of lower-level agency employees, which was redacted. FERC's redactions of the internal, pre-decisional agency discussions fall squarely within FOIA Exemption 5's deliberative process and the PII was redacted pursuant to Exemption 6. Therefore, Defendant respectfully moves for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56.

## BACKGROUND

These cases concern two FOIA requests that Plaintiff filed within two weeks of one another: FOIA-2022-0072 and FOIA-2022-85.

---

[1] As of the parties' most recent Joint Status Report in Civil Action No. 22-3419 (ECF No. 15), which was the result of the parties' discussions on narrowing the issues in this case, Plaintiff does not appear to challenge the adequacy of the search. In any event, Defendant maintains that all repositories for potentially responsive documents were searched. *See* Declaration of Carolyn Templeton ("Templeton Decl.") ¶ 26. FERC searched all locations under its control that were likely to yield records responsive to Plaintiff's FOIA Requests, FY22-72 and FY22-85. *Id.*

I.    **Request FOIA-2022-0072**

On July 29, 2022, Plaintiff filed the first FOIA request, seeking copies of "all correspondence between FERC and the White House (including any office therein, whether the Office of the White House Counsel, Office of the Domestic Climate Policy, or other White House office or official) seeking or otherwise pertaining to consultation with the White House on FERC's processing of *Freedom of Information Act requests, FOIA-2022-0024 and/or -0036*." Compl. 22-3419, ¶ 8 (emphasis added). Plaintiff's July 29 FOIA request explicitly stated that it did not "seek the records on which FERC sought consultation, but only FERC's correspondence accompanying those records, and subsequent correspondence." Declaration of Carolyn Templeton ("Templeton Decl.") ¶ 8. The same day, FERC acknowledged Plaintiff's request, and assigned it tracking number, FOIA-2022-0072 ("Request No. 72"). Compl. 22-3419, ¶ 10.

On August 25, 2022, FERC communicated to Plaintiff its determination with respect to Request No. 72, that the correspondence between FERC staff and the White House would be withheld in full pursuant to FOIA Exemption 5. Compl. 22-3419, ¶ 11. The next day, Plaintiff filed an appeal challenging that determination. *Id.* at ¶ 12.

On October 3, 2022, FERC denied Plaintiff's administrative appeal of Request No. 72 and upheld its withholding of responsive documents under Exemption 5's deliberative process privilege, and further invoked Exemption 5's attorney work-product privilege, and Exemption 6. Compl. 22-3419, ¶ 14; *see also* Templeton Decl., ¶ 12. On October 4, 2022, Plaintiff filed an action in district court (Civ. A. No. 22-3419)[2] challenging FERC's withholding determinations. *See generally* Compl., Civ. A. No. 22-3419.

---

[2]    Civil Action No. 22-3419 was originally filed in the United States District Court for the Southern District of Texas (Victoria Division) and was subsequently transferred to the United States District Court for the District of Columbia.

Regarding Request No. 72, FERC has since released four responsive documents in part, with redactions pursuant to Exemption 5 (deliberative process) and Exemption 6 (personal privacy). As to Exemption 5, FERC maintains that the documents related to the correspondence between it and White House counsel contain pre-decisional discussions conveying employees' thoughts, impressions, and recommendations regarding FERC's eventual decisions on responsiveness and legal exemptions to be applied. As to Exemption 6, FERC redacted personal identifying information, such as names and email addresses, of lower-level agency staff.

## II.   Request FOIA-2022-0085

While Plaintiff's first request was pending, it filed a second one on August 12, 2022, which was assigned tracking number FOIA-2022-0085 ("Request No. 85").  Request No. 85 essentially broadened Request No. 72.  Request No. 85 sought "all correspondence between FERC and the White House (including any office therein, whether the Office of White House Counsel, Office of Domestic Climate Policy, or other White house office or official), seeking or otherwise pertaining to consultation with the White House on FERC's processing of any Freedom of Information Act request, from January 21, 2021, through August 12, 2022." Compl., Civ. A. No. 22-2756, ¶ 9 (emphasis added). On August 15, 2022, FERC acknowledged receipt of this second, broader request. *Id.*

On September 12, 2022, Plaintiff filed another case in district court (Civ. A. No. 22-2756), alleging that FERC had failed to timely respond to Request No. 85. *See generally* Compl., Civ. A. No. 22-2756. FERC has since released nine responsive documents, in part, which include the four responsive documents from Request No. 72. As with Request No. 72, this second release contained redactions pursuant to Exemption 5 (deliberative process) and Exemption 6 (personal privacy). As to Exemption 5, FERC maintains the documents related to the consultation process between itself and White House counsel contain pre-decisional discussions conveying their thoughts,

- 3 -

impressions, and recommendations regarding FERC's eventual decisions on responsiveness and

legal exemptions to be applied. As to Exemption 6, FERC maintains that the documents contain

personal identifying information, such as names and email addresses, of lower-level agency staff.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and evidence "show[] that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the party moving for summary

judgment to demonstrate the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S.

at 323. A genuine issue is one that "might affect the outcome of the suit under the governing law."

*Liberty Lobby*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party

"may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific

facts showing that there is a genuine issue for trial." *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment[.]" *Brayton v.*

*Off. of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Rsch. Ctr. v. Dep't of*

*Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are

decided on motions for summary judgment."). A government agency may obtain summary

judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations.

*McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983). "[T]he Court may award summary

judgment solely on the basis of information provided by the department or agency in declarations

when the declarations describe 'the documents and the justifications for nondisclosure with

reasonably specific detail, demonstrate that the information withheld logically falls within the

claimed exemption, and are not controverted by either contrary evidence in the record nor by

evidence of agency bad faith.'" *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Labor*,

478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Media Rsch*, 818 F. Supp. 2d at 137 (quoting *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).

Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citation omitted).).

## ARGUMENT

## I.  Defendant Properly Applied FOIA Exemption 5

FOIA does not allow the public to have unfettered access to government files. *McCutchen v. Dep't of Health & Human Servs.*, 30 F.3d 183, 184 (D.C. Cir. 1994). Although disclosure is the dominant objective of FOIA, there are several exemptions to the statute's disclosure requirements. *Dep't of Def. v. Fed. Labor Relations Auth. ("FLRA")*, 510 U.S. 487, 494 (1994). FOIA requires that an agency release all records responsive to a properly submitted request unless such records are protected from disclosure by one or more of FOIA's nine exemptions. 5 U.S.C. § 552(b); *Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 150–51 (1989). To protect materials from disclosure, the agency must show that they come within one of the FOIA exemptions. *Pub. Citizen Health Rsch. Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007).

An agency may meet its burden to establish the applicability of an exemption by providing a *Vaughn* index that "permit[s] adequate adversary testing of the agency's claimed right to an exemption." *Nat'l Treas. Emps. Union v. U.S. Customs Serv.*, 802 F.2d 525, 527 (D.C. Cir. 1986);

*see also Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977); *Vaughn v. Rosen*, 484 F.2d 820, 828 (D.C. Cir. 1973). The index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record." *Nat'l Treas.*, 802 F.2d at 527 n.9.

Additionally, although a *Vaughn* index is a common device used by agencies to meet their burden of proof, "the Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" *CREW*, 478 F. Supp. 2d at 80 (quoting *Mil. Audit Project*, 656 F.2d at 738); *see also Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 998 n.4 (D.C. Cir. 1998). FERC's *Vaughn* Index is attached as Exhibit A to the Declaration of Carolyn Templeton and provides further detail on FERC's basis for its withholdings. Templeton Decl. ¶ 6.

Exemption 5, in particular, protects "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption shields documents of the type that would be privileged in the civil discovery context, including materials protected by the deliberative-process privilege and attorney work product doctrine. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Rockwell Int'l Corp. v. Dep't of Just.*, 235 F.3d 598, 602 (D.C. Cir. 2001). 29. The FOIA statute defines an agency as including "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory

agency." 5 U.S.C. § 552(f). In this case, the Exemption 5 withholdings invoke the deliberative process.

**A.      Defendant Properly Invoked the Deliberative Process Privilege**

The deliberative process privilege protects intra- or inter-agency documents that are "both predecisional and deliberative." *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 362 (D.C. Cir. 2021); *accord Mapother v. Dep't of Just.*, 3 F.3d 1533, 1537 (D.C. Cir. 1993). "A document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992). "Material is deliberative if it 'reflects the give-and-take of the consultative process.'" *Id.* "Examples of predecisional documents include 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.'" *Cleveland v. United States*, 128 F. Supp. 3d 284, 298–99 (D.D.C. 2015) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

The deliberative process privilege rests "on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001) (internal quotation marks and citations omitted); *accord Jud. Watch, Inc. v. Dep't of Just.*, 20 F.4th 49, 54 (D.C. Cir. 2021). The privilege is designed to prevent injury to the quality of agency decisions by (1) encouraging open, frank discussions on matters of policy between subordinates and superiors; (2) protecting against premature disclosure of proposed policies before they are adopted; and (3) protecting against

public confusion that might result from the disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's decision. *See Sears*, 421 U.S. at 151–53; *Coastal States*, 617 F.2d at 866; *CREW v. Dep't of Homeland Sec.*, 648 F. Supp. 2d 152, 156 (D.D.C. 2009); *FPL Grp. Inc. v. IRS*, 698 F. Supp. 2d 66, 81 (D.D.C. 2010). Within this context, the agency must demonstrate foreseeable harm, which requires the agency to make "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Reps. Comm.*, 3 F.4th at 370.

The "ultimate aim" of the deliberative process privilege set forth in Exemption 5 is to "prevent injury to the quality of agency decisions." *Petroleum Info.*, 976 F.2d at 1433–34 (internal quotations omitted). "There should be considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the agency give-and-take—of the deliberative process—by which the decision itself is made'" because the agency is best situated "to know what confidentiality is needed 'to prevent injury to the quality of agency decisions[.]'" *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *Sears*, 421 U.S. at 151).

Here, seven of the nine documents produced in this case were redacted pursuant to the deliberative process privilege. *See* Templeton Decl. ¶¶ 12, 20, 30; Ex. A, Templeton Decl. Those seven documents consisted of emails between White House counsel and FERC staff attorneys, discussing which exemptions should be applied before release of the documents to Plaintiffs. *See* Ex. A, Templeton Decl. FERC only redacted the discussions that preceded its final determination of how to respond to Plaintiff's requests, including what type of information could be potentially released related to the equities of another agency, and the underlying responsive documents related thereto. Templeton Decl. ¶¶ 19, 27, 30, 32; Ex. A, Templeton Decl.

FERC would be harmed by releasing the redacted information. FERC has explained that the release of this information would severely hamper the efficient day-to-day workings of government agencies because FERC employees would no longer feel free to work through problems by sharing ideas with colleagues via email messages. Templeton Decl. ¶¶ 31, 33. If this discussion were to be released to the public, FERC employees would be more circumspect in their written discussions with each other in the future. *Id*. FERC has further explained that this lack of candor would seriously impair the ability to foster the forthright inter-agency discussions that are necessary for efficient and proper decision making. *Id*. In addition, disclosure of FERC's preliminary assessments and opinions would mislead the public and cause public confusion by releasing information that does not represent a final agency opinion. *Id*. Indeed, it is critical that FERC engage in unfettered internal discussion and advice-seeking before settling on a final response to outside parties like Plaintiffs in this instance. *Id*. Otherwise, FERC's ability to act with one voice and convey accurate and thorough responses to outside parties would be hampered. *Id*.

FERC's position is made all the more legitimate in this instance when considering Plaintiff's request itself. By its very nature, the request seeks material that falls squarely within the deliberative process privilege: "all correspondence between FERC and the White House . . . pertaining to consultation with the White House on FERC's processing of any Freedom of Information Act request, from January 21, 2021, through August 12, 2022." Compl., Civ. A. No. 22-2756, ¶ 9. This information is quintessential deliberative process material. *Id.* ¶ 10. To that end, there can be no doubt that Exemption 5 is applicable. *See* Compl., Civ. A. No. 22-3419, ¶ 16.

Plaintiff's disagreement with FERC's deliberative process determination appears to rest on a misunderstanding of what constitutes "inter-agency" communications under Exemption 5. Plaintiff contends that the redacted portions "do not contain 'deliberations' among individuals of

the type protected by Exemption 5." Compl., Civ. A. No. 22-3419, ¶ 16. Plaintiff appears to suggest that because FERC, "an independent agency," consulted "with the White House on what [it] should release and/or consider not releasing," such communications are not covered by Exemption 5's deliberative process privilege, as "the White House has no role in formulating FERC decisions." Compl., Civ. A. No. 22-2756, ¶ 10; Compl., Civ. A. No. 22-3419 ¶ 12. This argument fails for two reasons. First, FOIA defines an agency as including "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency."  5 U.S.C. § 552(f). Thus, communications between FERC and the White House would be rightly considered "inter agency." Second, the "FERC decision" at issue here is not one related to the regulation of interstate transmission of electricity, natural gas, and oil, to the review of proposals to build liquefied natural gas terminals and interstate natural gas pipelines, or to the licensing of hydropower projects, *i.e.*, matters squarely within the purview of FERC's authority as an independent agency. *See* Compl., Civ. A. No. 22-2756 ¶ 4; Compl., Civ. A. No. 22-3419 ¶ 4. Rather, the FERC decision at issue here is its determination of whether and how to release communications with the White House concerning the processing of a FOIA request that directly involved the White House. By its very nature, the request implicates Exemption 5's deliberative process privilege.

For these reasons, the Court should grant summary judgment for Defendant on the application of Exemption 5's deliberative process privilege. Defendant has provided "a focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward." *Reps. Comm.*, 3 F.4th at 370. Accordingly, this chilling effect adequately fulfills

the requirements of 5 U.S.C. § 552(a)(8)(A)(i)(I) regarding foreseeable harm. *See Amadis v. Dep't of State*, 971 F.3d 364, 370–73 (D.C. Cir. 2020)("After all, "experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances ... to the detriment of the decision making process.""").

Because the materials are pre-decisional and deliberative, the Agency properly protected the information withheld under Exemption 5's deliberative process privilege.

### B.      Defendant Properly Invoked the Attorney Work Product Doctrine

The attorney-work product doctrine protects documents and other records prepared by or for an attorney in anticipation of litigation.  *Coastal States*, 617 F.2d at 864 (citing *Hickman v. Taylor*, 329 U.S. 495, 509–10 (1947)).  Attorney work product covers an attorney's thoughts and impressions, as well as documents and other memoranda prepared by an attorney in contemplation of litigation.  *Id.* at 864 (the attorney work-product doctrine "provides a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories").  The purpose of the privilege is to protect the adversary legal system itself, as the integrity of our system would suffer if adversaries were entitled to probe each other's thoughts and plans.  *Id.*  Thus, the privilege covers factual materials prepared in anticipation of litigation, as well as mental impressions, conclusions, opinions, and legal theories.  *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.C. Cir. 1997); *see also Jud. Watch, Inc. v. Dep't of Just.,* 432 F.3d 366, 371 (D.C. Cir. 2005) ("[F]actual material is itself privileged when it appears within documents that are attorney work-product"); *Heggestad v. Dep't of Just.,* 182 F. Supp. 2d 1, 7-8 (D.D.C. 2000) (the privilege covers factual materials prepared or collected in anticipation of litigation).

"Contemplation of litigation," however, does not require that an actual case is identifiable or ongoing.  The protection applies "even without a case already docketed or where the agency is

unable to identify the specific claim to which the document relates." *Heggestad,* 182 F. Supp. at 8; *see also Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992) (the privilege "extends to documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated").

Here, the responsive records concerned ongoing litigation with Plaintiff. Templeton Decl. ¶ 34. At the time of the two FOIA requests at issue here, Plaintiff was already actively engaged in litigation against FERC concerning prior requests to which the underlying communications of Request No. 72 relate. *Id.* FERC had reasonable expectations that Plaintiff would similarly subject the agency to additional litigation to obtain the communications subject to Request Nos. 72 and 85. *Id.* These communications were created in the context of pending FOIA litigation, to help promote the legality and defense thereof. *Id; see also Citizens for Resp. & Ethics v. Nat'l Archives & Records Admin.*, 583 F. Supp. 2d 146, 158 (D.D.C. 2008). Accordingly, because FERC was already subject to ongoing litigation involving related requests, it reasonably anticipated that the underlying communications and FOIA requests also would be subjected to litigation and therefore, warranted this additional protection.

## II.    **Defendant Properly Applied FOIA Exemption 6's Personal Privacy Privilege**

Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  When evaluating a withholding under Exemption 6, courts must determine whether: (1) the records at issue are personnel files, medical files, or similar files; (2) the material at issue implicates a privacy interest that is more than de minimis; and (3) the privacy interest outweighs any public interest in disclosure. *Nat'l Ass'n of Home Buyers v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002).  Regarding the first inquiry, the Supreme Court has directed lower courts to construe "similar files" broadly to apply to any "Government records on an individual which can

be identified as applying to that individual." *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991) (citing *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 601-02 (1982)).  As to the term "similar files," "bits of personal information, such as names and addresses" are also covered.  *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 152-53 (D.C. Cir. 2006).

As to the second inquiry, Exemption 6 is designed to protect personal information in public records, even if it is not embarrassing or of an intimate nature.  *Nat'l Ass'n of Ret. Fed. Emps. v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989).  While disclosure of names and addresses is "not inherently and always a significant threat to the privacy of those listed," whether disclosure is a significant or de minimis threat depends upon the circumstances.  *Id.* at 877.  This Court has recognized that "[w]hile the status of an individual as a federal employee may diminish their privacy interest, the level of responsibility held by a federal employee is also a relevant consideration when determining whether their involvement in a particular matter implicates a privacy interest." *Stonehill v. Dep't of Just.*, Civ. A. No. 19-3770, 2022 U.S. Dist. LEXIS 24285, at *57 (D.D.C. Feb. 10, 2022)  (internal citation omitted). The identity of low-level agency employees in an email does not shed light on the government. *Id.*; *Jud. Watch, Inc. v. United States*, 84 F. App'x 335, 339 (4th Cir. 2004) ("in conducting the Exemption 6 analysis here we must weigh the privacy interest of lower level federal employees in the nondisclosure of their names against . . . the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to.").

Thus, for the third inquiry, courts must balance the relevant privacy interests in nondisclosure and the public interest in disclosure, and determine whether, "on balance, disclosure would work a clearly unwarranted invasion of personal privacy."  *Reed*, 927 F.2d at 1252.  "[O]nly

official information that sheds light on an agency's performance of its statutory duties" merits disclosure under FOIA, whereas "disclosure of information about private citizens that is accumulated in various government files" would "reveal[] little or nothing about an agency's own conduct." *Id.* at 1251.

Here, FERC redacted information under Exemption 6 that implicate significant privacy interests, the disclosure of which would constitute a clear, unwarranted invasion of privacy. Specifically, the Agency withheld direct telephone numbers of FERC and White House staff, email addresses or full domains, and the names of lower-level employees. Templeton Decl. ¶ 37; Ex. A, Templeton Decl. This information was redacted due to the risk that this information, if released and posted publicly, would subject staff to further annoyance, threats, embarrassment, and harassment in the conduct of their official and private lives. *Id.* FERC concluded that no public interest outweighs the privacy interests implicated, particularly since disclosure of the information would not reveal the operations or activities of the federal government, but instead would expose government employees to an unwarranted invasion of their personal privacy. *Id.* Thus, FERC has properly balanced privacy interests in the nondisclosure of this information and the public interest in disclosure, and determined that on balance, disclosure would work a clearly unwarranted invasion of personal privacy.

Accordingly, FERC properly applied Exemption 6 to protect the privacy interests of lower-level agency employees.

**III.    Defendant Released All Reasonably Segregable Information.**

If a responsive record contains information exempt from disclosure, any "reasonably segregable" nonexempt information must be disclosed. 5 U.S.C. § 552(b). Nonexempt portions of records need not be disclosed, however, if they are "inextricably intertwined with exempt portions." *Mead Data*, 566 F.2d at 260. To establish that all reasonably segregable, nonexempt

information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578–79 (D.C. Cir. 1996); *Canning v. Dep't of Just.*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). As explained in the Templeton Declaration and accompanying *Vaughn* index, FERC properly considered each record and released all reasonably segregable information. Templeton Decl. ¶¶ 38-39; Ex. A, Templeton Decl.

## CONCLUSION

The documents at issue in this case contain the pre-decisional discussions between FERC staff and White House counsel—including their thoughts, impressions, and recommendations—regarding FERC's eventual decision on responsiveness and legal exemptions to be applied in answer Plaintiff's FOIA request. Because disclosure of this information would, in the specific context of the agency action at issue here and given Plaintiff's admitted purpose, actually impede those same agency deliberations going forward, Defendant properly applied Exemption 5. Additionally, disclosure of the direct telephone numbers, email addresses or full domains, and the names of lower-level employees would expose government employees to an unwarranted invasion of their personal privacy, while revealing nothing of the operations or activities of the federal government. Thus, Defendant properly redacted this information pursuant to Exemption 6. All of the redactions FERC applied are limited to the allowances under these exemptions, and all reasonably segregable nonexempt information has been disclosed to Plaintiff. For these reasons, the Court should grant summary judgment for Defendant.

Dated: May 5, 2023  
Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052  
United States Attorney

BRIAN P. HUDAK  
Chief, Civil Division

By: /s/ L'Shauntée J. Robertson  
    L'SHAUNTEE J. ROBERTSON, D.C. BAR #980248  
    Assistant United States Attorney  
    601 D Street, NW  
    Washington, DC 20530  
    202-252-1729  
    Lshauntee.robertson@usdoj.gov

*Counsel for the Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INSTITUTE FOR ENERGY RESEARCH,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL ENERGY REGULATORY<br>COMMISSION,<br><br>Defendant. | Civil Action Nos. 22-2756, 22-3419 (CKK) |

**DEFENDANTS' STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE DISPUTE**

Pursuant to Local Civil Rule 7(h), Defendants Federal Energy Regulatory Commission ("FERC"), by and through undersigned counsel, respectfully submit this Statement of Material Facts as To Which There is No Genuine Dispute in support of their Motion for Summary Judgment supported by the Declaration of Carolyn Templeton and attached exhibits.

**Request FOIA-2022-0072**

1.     On July 29, 2022, Plaintiff filed a FOIA request, seeking copies of "all correspondence between FERC and the White House (including any office therein, whether the Office of the White House Counsel, Office of the Domestic Climate Policy, or other White House office or official) seeking or otherwise pertaining to consultation with the White House on FERC's processing of *Freedom of Information Act requests, FOIA-2022-0024 and/or -0036*." Compl. 22-3419, ¶ 8 (emphasis added).

2.     Plaintiff's July 29 FOIA request explicitly stated that it did not "seek the records on which FERC sought consultation, but only FERC's correspondence accompanying those

records, and subsequent correspondence." Templeton Decl. ¶ 8. The same day, FERC acknowledged Plaintiff's request, and assigned it tracking number, FOIA-2022-00*72*. Compl. 22-3419, ¶ 10.

3.      On August 25, 2022, FERC communicated to Plaintiff its determination with respect to  FOIA-2022-00*72*, that the correspondences between FERC staff and the White House would be withheld in full pursuant to FOIA Exemption 5. Compl. 22-3419, ¶ 11. The next day, Plaintiff filed an appeal challenging that determination. *Id.* at ¶ 12.

4.      On October 3, 2022, FERC denied Plaintiff's administrative appeal of FOIA-2022-00*72*, and upheld its withholding of responsive documents under Exemption 5's deliberative process privilege, and further invoked Exemption 5's attorney work-product privilege, and Exemption 6's personal privacy privilege. Compl. 22-3419, ¶ 14; *see also* Templeton Decl., ¶ 12. On October 4, 2022, Plaintiff filed Case No. 1:22-cv-3419,[3] challenging FERC's withholding determinations. *See generally* Compl. 22-3419.

5.      Since the filing of Case No. 1:22-cv-3419, FERC has released four responsive documents in part, with redactions pursuant to Exemption 5 (deliberative process) and Exemption 6 (personal privacy). As to Exemption 5, FERC maintains that the documents related to the consultation process between agency and White House counsel contain pre-decisional discussions conveying their thoughts, impressions, and recommendations regarding FERC's eventual decisions on responsiveness and legal exemptions to be applied. As to Exemption 6, FERC

---

[3] The October 4, 2022 case, No. 1:22-cv-3419, was originally filed in the United States District Court for the Southern District of Texas (Victoria Division), and was subsequently transferred to the United States District Court for the District of Columbia.

maintains that the documents contain personal identifying information, such as names and email addresses, of lower-level agency staff.

**Request FOIA-2022-0085**

6.      Plaintiff filed a second FOIA request on August 12, 2022. This second request sought "all correspondence between FERC and the White House (including any office therein, whether the Office of White House Counsel, Office of Domestic Climate Policy, or other White house office or official), seeking or otherwise pertaining to consultation with the White House on FERC's processing of *any* Freedom of Information Act request*, from January 21, 2021, through August 12, 2022*." Compl. 22-2756, ¶ 9 (emphasis added). On August 15, 2022, FERC acknowledged receipt of this second, broader request, and assigned it tracking number, FOIA-2022-**85**. *Id.*

7.      On September 12, 2022, Plaintiff filed Case No. 1:22-cv-2756, alleging that FERC had failed to timely respond to the second, broader request, FOIA-2022-**85**. *See generally* Compl. 22-2756.

8.      Since the filing of Case No. 1:22-cv-2756, FERC has released nine responsive documents, in part, which include the four responsive documents from FOIA-2022-00**72**. Templeton Decl. ¶ 18.

9.      As with FOIA-2022-00**72**, this second release contained redactions pursuant to Exemption 5 (deliberative process) and Exemption 6 (personal privacy). Templeton Decl. ¶ 21.

*      *      *

Dated: May 5, 2023
Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: /s/ L'Shunteé J. Robertson
    L'SHAUNTEE J. ROBERTSON, D.C. BAR #980248
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    202-252-1729
    Lshauntee.robertson@usdoj.gov

*Counsel for the Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INSTITUTE FOR ENERGY RESEARCH,

Plaintiff,

v.

FEDERAL ENERGY REGULATORY
COMMISSION,

Defendant.

Civil Action Nos. 22-2756, 22-3419 (CKK)


**[PROPOSED] ORDER**

UPON CONSIDERATION of Defendants' Motion for Summary Judgment, and the entire record herein, it is hereby

ORDERED that Defendants' Motion is GRANTED, and it is further

ORDERED that summary judgment is granted in Defendants' favor on Plaintiff's claims in this action. This is a final appealable order.


SO ORDERED:


Dated: _____         _____
                                       COLLEEN KOLLAR-KOTELLY
                                       United States District Court Judge