**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| INSTITUTE FOR ENERGY RESEARCH, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 22-3419 (CKK) |
| FEDERAL ENERGY REGULATORY COMMISSION, | ) ) ) | |
| Defendant. | ) ) ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

LEGAL STANDARD............................................................................................................2

**I.      Defendant's Vaughn Index Is Insufficiently Detailed to Show the Redacted
         Information Is Exempt, By Omitting Names, Dates, and Other Critical
         Information Needed to Establish That Records Are Privileged and Covered by
         Exemption 5.**........................................................................................................3

**II.     Exemption 6 Does Not Justify Defendant's Redaction of Agency Employees'
         Names, Which the Justice Department's Own FOIA Guide Says Must Be
         Released, Nor Does It Justify Its Redaction of Other Non-Sensitive Information.** ...10

**III.    Defendant Does Not Show the Harm Needed to Withhold or Redact the
         Responsive Records.** .........................................................................................14

**IV.     Defendant Fails to Show that All Reasonably Segregable Non-Exempt
         Information Has Been Released.** ......................................................................18

**V.      Defendant Fails to Set Forth Material Facts on Which Summary Judgment Can
         Be Granted.**.........................................................................................................19

CONCLUSION......................................................................................................................20

INTRODUCTION

FERC has violated the Freedom of Information Act ("FOIA") in multiple ways. It has not justified its withholdings of information under FOIA's Exemption 5 in seven (7) records, because its Vaughn Index lacks sufficient detail, and fails to provide even the most basic information for many records, such as senders/ recipients (by name and not merely position), and its justifications for why the record is allegedly covered by FOIA's Exemption 5 are repetitive if with slight deviations and boilerplate. Thus, FERC fails to establish the withheld information is covered by the deliberative process privilege, or even that the underlying information is truly intra-agency or inter-agency communications potentially covered by FOIA's Exemption 5.

FERC wrongly withholds information under FOIA's Exemption 6 in nine (9) records that does not implicate a significant privacy interest and in which there is a strong public interest in disclosing, specifically the names of agency officials involved in formulating government policy. Courts routinely rule that such information must be disclosed because it is obviously not covered by Exemption 6. Even the Justice Department's own FOIA guide says that the names of agency employees need to be released, because there is no expectation of privacy regarding their names. Yet FERC repeatedly redacts agency employees' names.

FERC's withholdings are all invalid because it has not shown that disclosure of any of the withheld information would cause harm, as the 2016 FOIA Amendments require for withholding even exempt information.

As such, FERC has not shown that it produced all reasonably segregable records responsive to Plaintiff's FOIA requests

LEGAL STANDARD

Under FOIA, an agency is obligated to demonstrate that "each document that falls within

the class requested" has either "been produced" or is "exempt." *Goland v. CIA*, 607 F.2d 339,

352 (D.C. Cir. 1978). The agency bears the "burden of showing that its search was adequate,"

rather than the FOIA requestor having to prove that it was inadequate. *Carney v. U.S. Dep't of*

*Justice*, 19 F.3d 807, 812 (2d Cir.1994).

In a lawsuit under the Freedom of Information Act, the "burden is on the agency to

demonstrate, not the requester to disprove, that the materials sought … have not been

'improperly' 'withheld.'" *Department of Justice v. Tax Analysts*, 492 U.S. 136, 142 n. 3 (1989).

"The burden is on the agency to prove de novo in trial court that the information sought

fits under one of the exemptions to the FOIA." *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir.

1973). Because of FOIA's presumption in favor of disclosure, exemptions are "narrowly

construed." *FBI v. Abramson*, 456 U.S. 615, 630 (1982); *accord Dep't of Air Force v. Rose,* 425

U.S. 352, 360–61 (1976); *Loving v. Dep't of Defense*, 550 F.3d 32, 37 (D.C. Cir. 2008).

Moreover, "Under the FOIA Improvement Act of 2016, the government may not

withhold even those privileged materials unless it also 'reasonably foresees that disclosure would

harm an interest protected by' the FOIA exemption." *Reporters Committee v. FBI*, 3 F.4th 350,

369 (D.C. Cir. 2021), *citing* 5 U.S.C. § 552(a)(8)(A)(i)(I). This "reasonable foreseeability of

harm" standard requires the withholding agency to provide "context or insight into the specific

decisionmaking processes or deliberations at issue, and how they in particular would be harmed

by disclosure" of the contested records. *Judicial Watch, Inc. v. U.S. Dep't of Justice*, No. 17-

0832 (CKK), 2019 WL 4644029, at *5 (D.D.C. Sept. 24, 2019). That is, the agency must

demonstrate the foreseeability of harm, as well as the existence of an otherwise exempt exchange.

An agency's summary-judgment declarations must contain "reasonable specificity of detail rather than merely conclusory statements," that "are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Judicial Watch. v. U.S. Secret Serv.*, 726 F.3d 208, 215 (D.C. Cir. 2013). A declaration must therefore "provide detailed and specific information demonstrating that material withheld is logically within the domain of the exemption claimed." *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998), as amended (Mar. 3, 1999).

Under FOIA, an agency has a duty to "segregate and release nonexempt information." 5 U.S.C. § 552(a)(8)(A)(ii). This duty is so essential that even if the FOIA requester does not challenge the agency's failure to release nonexempt information, "the District Court ha[s] an affirmative duty to consider the segregability issue *sua sponte*." *Transpacific Policing v. U.S. Customs*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

## I.     Defendant's Vaughn Index Is Insufficiently Detailed to Show the Redacted Information Is Exempt, By Omitting Names, Dates, and Other Critical Information Needed to Establish That Records Are Privileged and Covered by Exemption 5.

Defendant has not met the most basic requirement for a *Vaughn* Index: listing the names of all senders and recipients of withheld documents. *See* ECF No. 17-1. Indeed, it appears FERC disclosed the identity of certain individuals only by title, and otherwise withheld "the parties and dates/times" of various messages, including "names, dates, and times in deliberative documents"; *Coastal Corp. v. Dept. of Energy*, 496 F. Supp. 57, 59 (D. Del. 1980) (to "adequately describe each withheld agency record," an agency's Vaughn Index must list "the full name(s) of all author(s)," "the full name(s) of all addressee(s)," and "the full name(s) of the

3

additional person or persons to whom each agency record was circulated”); *People for the American Way Foundation v. U.S. Department of Education*, 516 F.Supp.2d 28, 30, 41-42 (D.D.C. 2007) (“the Vaughn index shall include the names and affiliations of all senders and recipients for each communication”).

The Vaughn Index entry with Doc. No. 1 - 9 withholds the identity of multiple parties to the communication (listing only Vanessa Le as one of the parties to the communication, with others identified by title, “FERC Attorneys” (##1-7) or FERC Attorney” (##8-9)), withholds the precise time of the communication, and does not describe its subject matter except in the most general of terms, violating every requirement for a Vaughn Index listed in *Coastal Corp.*, 496 F. Supp. at 59. It conclusorily asserts the fact of the withholding as pred-decisional interagency communication as its explanation, e.g., “The redactions apply to discussions concerning the FOIA consultation process within the Executive branch, including FERC’s explanation of what information was redacted and a request for input.” (Document No. 1).

The Vaughn Index is similarly deficient in that it does not allege that the identified record(s) contain(s) any specific deliberation on an identifiable agency decision or that its release would have any chilling effect on agency deliberations. *See* ECF No. 17-1. Instead it cites “the FOIA consultation process” (Doc. ## 1-4) or “how the WH has been applying FOIA Exemption 6” (Doc. ## 5-7).

The Vaughn Index entry for every identified record lists only “FERC Attorneys” or “FERC Attorney” as among the parties to correspondence. But who is are these attorneys? And are they acting in any deliberative or advisory capacity? Nothing in defendant’s papers provides any hint. This failure does not satisfy FERC’s duty to list the “names *and* affiliations of all senders and recipients,” even “for documents that” are described by the agency as “purely

internal." *People for the American Way Foundation v. U.S. Department of Educ.*, 516 F.Supp.2d 28, 30, 41-42 (D.D.C. 2007) (*emphasis added*).

Deliberative process privilege is waived if an agency shares communications with private citizens or non-federal employees, *see Department of Interior v. Klamath Water Users Protective Assn.,* 532 U.S. 1, 9 (2001) (tribe's communications with agency were not covered by Exemption 5, even where agency labeled tribe as consultant and cited need for confidentiality; "'the communication must be "inter-agency or intra-agency.' 5 U. S. C. § 552(b)(5)," not "communications with outsiders"), but FERC has made no effort to explain how unidentified attorneys were involved in deliberations on its behalf, as opposed to deliberations on behalf of themselves or some other client or even the White House, on whose behalf FERC is invoking the cited exemptions.[1] This is true even if the communication is shared with someone the agency views as the functional equivalent of an agency employee (such as someone it views as an agency consultant), but who turns out to be insufficiently akin to an agency official in the eyes of a court. *See, e.g., CEI v. OSTP*, 161 F.Supp.2d 120, 128, 134-35 (D.D.C. 2016).

To show communications are "intra-agency" or "inter-agency" for purposes of FOIA, and thus potentially privileged under Exemption 5, an agency must list the "names and affiliations of all senders and recipients," even "for documents that" are described by the agency as "purely internal." *People for the American Way Foundation v. U.S. Department of Educ.*, 516 F.Supp.2d

---

[1] Plaintiff notes that the White House is not an "agency" as that term is defined in FOIA, 5 U.S.C. §552 (a), and that the inter-agency and intra-agency exemptions therefore do not apply to white house communications. See, e.g., *Meyer v. Bush*, 299 U.S. App. D.C. 86, 981 F.2d 1288, 1292 (1993) (for the proposition that the president's personal staff and parts of the Executive Office whose sole purpose is to advise and assist the president are not "agencies" within the meaning of FOIA).

28, 30, 41-42 (D.D.C. 2007).[2] FERC needs to list the names of those who were parties to these communications to assert they are privileged and covered by Exemption 5.

In its *Vaughn* Index, an agency is not allowed to rely on "identical justifications" for each of a series of different withholdings. *See King v. United States Dep't of Justice*, 830 F.2d 210, 219–25 (D.C. Cir. 1987). Entries in the Vaughn Index cannot describe withholdings in such a non-specific way that the description would apply to virtually any withholding before the court. *See Judicial Watch v. United States Postal Service*, 297 F.Supp.2d at 252, 264 (D.D.C.2004); *ICM Registry v. U.S. Dept. of Commerce*, No. 06-cv-0949 (JR), 2007 WL 1020748, *6 (D.D.C. March 29, 2007); *NRDC v. Dept. of Defense*, 388 F.Supp.2d 1086, 1103-04 (C.D. Cal. 2005). *Compare Mayer, Brown & Rowe v. I.R.S.*, 537 F. Supp. 2d 128, 136 (D.D.C. 2008) (Collyer, J.) (ruling that agency could not withhold documents reflecting deliberations about how much information should be "conveyed" to general public because such deliberations were "too removed from an actual policy decision"); *Fox News v. U.S. Dept. of Treasury*, 911 F.Supp.2d 261, 281 (S.D.N.Y. 2012) ("public response" justification was insufficiently connected to agency "policy action"); *Reporters Committee v. FBI*, 3 F.4th 350, 363-64 (D.C. Cir. 2021).

The Templeton Declaration adds no meaningful detail to the *Vaughn* Index, instead calling into question its reliability and the reliability of defendant's summary judgment papers in general. The Templeton Declaration states at ¶ 31 that "material containing or prepared in connection with the formulation of opinions, advice, evaluations, deliberations, *policy formulation*, proposals, conclusions or recommendations may properly be withheld. Release of

---

[2] *See also Defenders of Wildlife v. U.S. Border Patrol*, 623 F.Supp.2d 83, 88 (D.D.C.2009)(in addition to identifying the "originating component agency," the agency must identify, e.g., "the author, and . . . the recipient of the document."); *CREW v. DHS*, 648 F.Supp.2d 152, 163 (D.D.C. 2009)("critical information" needed to establish a privilege claim includes, "for example," "the documents' respective authors" and "recipients.").

this type of information would have an inhibitive effect upon the development of *policy* and administrative direction of an agency." (emphasis added). The unreliability of this assertion is laid bare by the declaration's lack of other references to any asserted "policy" being deliberated by FERC or its employees.

Moreover, Templeton never describes what "policy actions" the records at issue supposedly relate to. The Declaration does not allege that the messages relate to any agency decision-making process at all (nor does it indicate even the *type* of decision-making process or deliberations at issue[3]).  Reviewing the Vaughn Index, which is not declared to be accurate by Templeton or any other declarant (and thus should not be relied upon), does not fix this problem, because of the dearth of detail in the Vaughn Index itself.

Moreover, FERC has not excluded the possibility that many of the withheld or redacted text messages relate to things that do not rise to the level of policy formulation. Merely because an agency employees discuss a FOIA request, the agency's response thereto, "the FOIA consultation process within the Executive branch" or "how the WH has been applying FOIA Exemption 6" does not make such discussions privileged. *Compare Mayer, Brown & Rowe v. I.R.S.*, 537 F. Supp. 2d 128, 136 (D.D.C. 2008)  (Collyer, J.) (ruling that agency could not withhold documents reflecting deliberations about how much information should be "conveyed" to general public because such deliberations were "too removed from an actual policy decision");

---

[3] Agency deliberations and decision-making processes involve many types of agency activities, some of which are not covered by deliberative-process privilege. *Compare Mayer, Brown & Rowe v. I.R.S.*, 537 F. Supp. 2d 128, 136 (D.D.C. 2008)  (Collyer, J.) (ruling that agency could not withhold documents reflecting deliberations about how much information should be "conveyed" to general public because such deliberations were "too removed from an actual policy decision"); *Fox News v. U.S. Dept. of Treasury*, 911 F.Supp.2d 261, 281 (S.D.N.Y. 2012) ("public response" justification was insufficiently connected to agency "policy action"); *Reporters Committee v. FBI*, 3 F.4th 350, 363-64 (D.C. Cir. 2021).

*Fox News v. U.S. Dept. of Treasury*, 911 F.Supp.2d 261, 281 (S.D.N.Y. 2012) ("public response" justification was insufficiently connected to agency "policy action"); *Reporters Committee v. FBI*, 3 F.4th 350, 363-64 (D.C. Cir. 2021).

"An agency invoking the deliberative-process privilege…must 'establish what deliberative process is involved, and the role played by the documents in issue in the course of that process.'…The agency… 'bears the burden of establishing the character of the decision, the deliberative process involved, and the role played by the documents in the course of that process.'" *CREW v. DOJ*, 45 F.4th 963, 972 (D.C. Cir. 2022) (citations omitted). FERC's short Vaughn descriptions and its accompanying index, bare of any detail, does not come close to meeting this burden.

The bare assertion in the Templeton Declaration at ¶ 31 that release of the messages at issue would somehow chill discussions does not contain sufficient detail to show they are privileged. Many emails that would be embarrassing if produced are not covered by deliberative process privilege, because they do not relate a specific agency decisionmaking process. *See Vaughn v. Rosen,* 523 F.2d 1136, 1143 (D.C. Cir. 1975) (finding an agency's efforts to evaluate and change its personnel policies, rules and standards too amorphous to qualify as a process for the purposes of the deliberative process privilege). [4]

---

[4] Plaintiff acknowledges that its FOIA requests contemporaneous with the one at issue here, which seeks discussions about whether and how to process these requests, have caused embarrassment that the agency has sought to mitigate but this does not equate with making the information privileged. For example, at a recent hearing of the Senate Committee on Energy and Natural Resources Senator Hawley stated he was "extremely, extremely disturbed" over perceived improprieties revealed by emails and text messages produced in litigation, in response to which Committee Chairman Joe Manchin replied "absolutely." *See, e.g., Sen. Hawley Presses FERC Commissioner On Meeting With Donor Groups*, You Tube, May 4, 2023, https://www.youtube.com/watch?v=3_Fmwq5MVgw. That Congress is disturbed by agency records and what they reveal no doubt chills future discussions at FERC, but it did not make the underlying messages privileged.

Further, not all agency decisions are even covered by the deliberative process privilege. *See, e.g., Elkem Metals Co. v. U.S.*, 126 F.Supp.2d 567, 576-77 (C.I.T. 2000) (privilege did not protect "a draft of the ITC's issuance of a schedule for the conduct of its changed circumstances reviews," or agency's "draft of a proposed work schedule" or "another proposed work schedule"; items were "not protected by the deliberative process privilege," especially since "disclosure" of "scheduling information" would not "discourage candid discussions within the agency" and such information did not "reflect the give-and-take" of the agency's "decision-making process"); *Hennessey v. U.S. Agency For Intern. Development,* 121 F.3d 698, 1997 WL 537998, *5 (4th Cir. Sept. 2, 1997) (even "construction scheduling dispute" that gave rise to legal claim against agency was not shielded by deliberative-process privilege because it did "not bear on a policy-oriented judgment of the kind contemplated by Exemption 5"; even if a "decision" regarding such a matter "can be regarded as a 'policy,'" it is not the "'stuff' of the deliberative process privilege" if it is at the "very outer limits" of what is a policy).

Defendant's *Vaughn* Index entries are far less detailed than even the scanty descriptions courts have found too lacking in detail to support a deliberative-process privilege claim, such as saying that withheld information relates to "high tech policy issues," *ICM Registry, LLC v. U.S. Dept. of Commerce*, No. 06-cv-0949 (JR), 2007 WL 1020748, *6 (D.D.C. March 29, 2007), "wilderness issues," *Wilderness Society v. Dep. of Interior*, 344 F.Supp.2d 1, 12 (D.D.C. 2004), "environmental testing and safety measures," *Judicial Watch,* 297 F.Supp.2d at 264, or "HLCG information sharing principles." *Electronic Frontier Foundation v. U.S. Dept. of Justice*, 826 F.Supp.2d 157, 168-70 (D.D.C. 2011).

## II.     Exemption 6 Does Not Justify Defendant's Redaction of Agency Employees' Names, Which the Justice Department's Own FOIA Guide Says Must Be Released, Nor Does It Justify Its Redaction of Other Non-Sensitive Information.

FERC has improperly withheld the names of agency employees and has inaccurately characterized such employees as low-level or identified them by title only. This illustrates that FERC's Vaughn Index is untrustworthy and should not be relied upon to grant summary judgment to defendant.

The Justice Department's own FOIA guide recognizes that it is generally improper to withhold agency employees' names. As it concedes, "Civilian federal employees who are not involved in law enforcement or sensitive occupations generally have no expectation of privacy regarding their names." *Department of Justice Guide to the Freedom of Information Act: Exemption 6*, at 19, available at www.justice.gov/oip/page/file/1207336/download#page=19, *citing, e.g.,* OPM Regulation, 5 C.F.R. § 293.311 (2020) (specifying that certain information contained in federal employee personnel files, such as employee's "name," is generally available to public); *Core v. USPS*, 730 F.2d 946, 948 (4th Cir. 1984) (finding no substantial invasion of privacy in information identifying successful federal job applicants)*; Leadership Conf. on C.R. v. Gonzales*, 404 F. Supp. 2d 246, 257 (D.D.C. 2005) (noting that Justice Department paralegals' names and work numbers "are already publicly available from [OPM]"); *Laws. Comm. for Hum. Rts. v. INS*, 721 F. Supp. 552, 569 (S.D.N.Y. 1989) (stating that "disclosure [of names of State Department's officers and staff members involved in highly publicized case] merely establishes State [Department] employees' professional relationships or associates these employees with agency business"); *Nat'l W. Life Ins. Co. v. United States*, 512 F. Supp. 454, 461 (N.D. Tex. 1980) (discerning no expectation of privacy in names and duty stations of Postal Service employees).

Agencies generally cannot withhold the names of staff — as opposed to private citizens — under Exemption 6. "A name and work telephone number is not personal or intimate information, such as a home address or a social security number, that normally would be considered protected information under FOIA Exemption 6." *Leadership Conference on Civil Rights v. Gonzales*, 404 F.Supp.2d 246, 257 (D.D.C. 2005) (agency had to release names and telephone numbers of its paralegals); *Sikes v. U.S.*, Civil No. No. CV-312-045, 2013 WL 6633082 (S.D. Ga. Dec. 6, 2013) ("[d]efendants have failed to demonstrate that disclosure of the redacted names on the invitation list would amount to a 'clearly unwarranted invasion of personal privacy,'" especially given that "impact" of disclosure would be "minimal").

Exemption 6 case law generally requires agency employees' names to be released, even when that would not shed light on policymaking. *See, e.g., International Federation of Professional and Technical Engineers v. Superior Court*, 64 Cal.Rptr.3d 693 (Cal. 2007) (state government employees had no privacy right in their names or salaries, which had to be produced in response to public-records request); *National W. Life Ins. v. United States*, 512 F. Supp. 454, 461 (N.D. Tex. 1980) (names of Postal Service employees ordered released); *cf. American Oversight v. HHS*, 2022 WL 1719001 (D.D.C. May 27, 2022), Slip Op. at 64 ("The Court concludes that Defendants are required to disclose the names of attendees and locations of meetings" described in agency calendar entries; "'even when the contents of meeting minutes are properly withheld under Exemption 5, the basic information about the meeting, including 'the date and time of the meeting, the names of . . . members present, and the names of observers' remains nonexempt"), *quoting Judicial Watch v. Dep't of the Treasury,* 796 F.Supp.2d 13, 29 (D.D.C. 2011) (ordering the release of "the date and time of the meeting, the names of the OFS Investment Committee members present, and the names of observers" for meeting minutes).

Defendant does not explain why the usual rule in favor of disclosure does not apply here, where the identity of employees ostensibly providing legal advice is particularly relevant to understanding the agency's actions.

The identity of FERC's policymakers and attorneys involved in (claimed) policymaking is obviously significant, and a significant public interest outweighs any "competing interests" in privacy. *See Wash. Post Co. v. HHS*, 690 F.2d 252, 261 (D.C. Cir. 1982) ("Finally, we balance the competing interests to determine whether the invasion of privacy is clearly unwarranted."); *Roth v. DOJ*, 642 F.3d 1161, 1166 (D.C. Cir. 2011) (public interest in information "outweighs the three men's privacy interest in having the FBI not disclose whether it possesses any information linking them to the murders") (Exemption 7(C)); *Lardner v. DOJ*, 398 F. App'x 609, 610 (D.C. Cir. 2010) (per curiam) (holding that public interest in knowing the names of unsuccessful clemency applicants outweighed applicants' privacy interests); *Rosenfeld v. DOJ*, No. 07-3240, 2012 WL 710186, at *8 (N.D. Cal. Mar. 5, 2012) (public interest in knowing about traffic violation outweighed privacy interests).

But even if there were little public interest in the information, and these individuals truly were just low-level staff, their names should still be released. Paralegals are low-level employees, but their names and work telephone numbers have to be released. *Leadership Conference on Civil Rights v. Gonzales*, 404 F.Supp.2d 246, 257 (D.D.C. 2005); *see also National W. Life Ins. v. United States*, 512 F. Supp. 454, 461 (N.D. Tex. 1980) (releasing low-level employees' names); *International Federation of Professional and Technical Engineers v. Superior Court*, 64 Cal.Rptr.3d 693 (Cal. 2007) (same). If paralegals' names must be released, it stands to reason that attorneys' names working with the White House to discern the latter's view on what information FERC should or should not release must similarly be subject to public view.

12

Government employees do not have a significant privacy interest in their mere name.

*See, e.g., Hopkins v. Department of the Navy*, Civil No. 84-1868, slip op. at 4 (D.D.C. Feb. 5,

1985) (release of names and official duty addresses of marines stationed at Quantico, Virginia

would not constitute invasions of personal privacy because it "would disclose nothing about any

of the individuals listed other than the fact that they are members of the armed services, which is

itself a matter of public record"); *National Western Life Insurance Co. v. United States*, 512 F.

Supp. 454, 461 (N.D. Tex. 1980) ("It cannot be seriously contended that postal employees have

an expectation of privacy with respect to their names and duty stations.").

Private information must implicate a "significant privacy interest" to trigger protection,

not just any privacy interest. *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C.

Cir. 2008) (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir.

1989)). Exemption 6 does not protect against "every incidental invasion of privacy….only those

invasions that implicate private personal details may be precluded. Thus, for such information to

be protected, it must '"compromise a substantial, as opposed to a de minimis, privacy interest."'

*Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. DOJ*, 503 F.Supp.2d 373, 382 (D.D.C. 2007),

*quoting Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002).

By knowing who FERC consults for advice, one will know what sort of leanings and

background FERC may currently prize, which will shed light on its future policy direction. The

identify of attorneys can be of public interest and is commonly noted both on court dockets and

in news articles.

Disclosure of names is so mundane and unlikely to cause harm, that disclosing the

"names" of the parties to a communication (including all staffers) is required for a Vaughn

Index, *Coastal Corp. v. Dept. of Energy*, 496 F.Supp. 57, 59 (D. Del. 1980), and for establishing

13

that privilege claims, including those claimed to be wholly internal to the government. *See People for the American Way Foundation v. U.S. Department of Education*, 516 F.Supp.2d 28, 30, 41-42 (D.D.C. 2007).

Defendant is also wrong to withhold email addresses. Citizens' email addresses can generally be withheld (unless that is the only clue as to their identity), *but see Prechtel v. FCC*, 330 F.Supp.3d 320, 329-34 (D.D.C. 2018) (ordering citizens' email addresses released where it was alleged that spam comments had been submitted by fake commenters), but government employees' email addresses usually can't be withheld, because they have no privacy interest in concealing their taxpayer-provided email address. *See Kleinert v. BLM*, 132 F.Supp.3d 79 (D.D.C. 2015) (finding that defendant did not meet its burden to support use of Exemption 6 to withhold email addresses). Defendant has not explained why that precept does not apply here.

### III. Defendant Does Not Show the Harm Needed to Withhold or Redact the Responsive Records.

More importantly, FERC does not "concretely explain how" and "why actual harm would foreseeably result from release," which is an independent requirement under the 2016 FOIA Amendments before even material privileged under Exemptions 5 and 6 can be withheld. *Reporters Committee v. FBI*, 3 F.4th 350, 369-71 (D.C. Cir. 2021), citing 5 U.S.C. § 552(a)(8)(A)(i)(I). It is routine for agencies to list the names of parties to communications in their Vaughn Indexes,[5] yet FERC has withheld the names of individuals, including agency employees, including parties to the communication.

---

[5] *See Metropolitan St. Louis Sewer Dist. v. U.S. E.P.A.*, 2012 WL 685334, *3 (E.D. Mo. March 2, 2012) (In agency's Vaughn Index, "Each entry identifies the subject of the record...the date and time for the email or record, the author, the recipients, and any attachments").

In its *Vaughn* Index, an agency is not allowed to rely on "identical justifications" for each of a series of different withholdings. *See King v. United States Dep't of Justice*, 830 F.2d 210, 219–25 (D.C. Cir. 1987). Yet Defendant's Vaughn Index provides slightly tweaked or even the exact same boilerplate justification for its redactions in these 9 records. And that claim fails to seriously consider or argue with relation to any harm the government foresees from release.

Again, the Templeton Declaration adds no meaningful detail to the Vaughn Index but instead calls into question its reliability and the reliability of defendant's summary judgment papers in general. The Templeton Declaration speculates only in one paragraph (¶31) that release of information might chill the government's work, and is accompanied by 9 separate but largely and sometimes verbatim repetitive and boilerplate claims of "harm" in the accompanying Vaughn log.

Moreover, FERC never explains why releasing agency employees' names would cause harm. Given that agencies are often required to release agency employees' names, *see, e.g., National W. Life Ins. v. United States*, 512 F. Supp. 454, 461 (N.D. Tex. 1980), with no apparent ill effect, it is hard to fathom how it could cause harm here. Defendant never addresses what harm could result from disclosure of an employee's mere name.

For example, merely revealing an agency employee's name or role in policymaking would not violate their privacy or embarrass them. To the contrary, it would benefit the employee. Publicly revealing that an agency employee participated in formulating agency policy about a topic is likely to improve their image, give their ego a boost, and make them feel valued, rather than chilling their participation in the agency's decisionmaking process. In the real world, agency employees take pride in publicity about their role in working on proposed regulations and other agency actions. That's why if you are a federal manager, one of the classic ways to

15

"support your colleagues" and improve employee morale is to highlight their role in "a policy change that will affect millions of people," as the Census Bureau does this with its "Innovator of the Month nominations. Every month, we highlight incredible employees who are nominated by their peers as being change makers at the Census Bureau…staff members see their success and know their work is paying off." Jeannie Schiffer, *3 Rules for Staying Positive and Proud as Federal Employees*, GovLoop, June 23, 2016, https://www.govloop.com/community/blog/3-rules-for-staying-positive-and-proud-as-federal-employees/

Templeton alleges in conclusory fashion that "Release of this type of information would have an inhibitive effect upon the development of policy and administrative direction of an agency because it would chill the full and frank discussion between agency personnel regarding a decision." Templeton Decl. ¶ 31. But the declarant does not explain how, and merely saying that does not make it so. The D.C. Circuit in *Reporters Committee* found "wholly generalized and conclusory" an agency exemption claim that described at greater length than defendant's Vaughn Index or Templeton's Declaration how disclosure of a staffer's "opinion" allegedly "would chill full and frank discussions between agency personnel and decision makers regarding a decision." *Reporters Committee v. FBI*, 3 F.4th at 370. It found insufficiently detailed the statement that:

> Disclosure … would have an inhibiting effect upon agency decisionmaking and the development of policy because it would chill full and frank discussions between agency personnel and decision makers regarding a decision. If agency personnel know that their preliminary impressions, opinions, evaluations, or comments would be released to the general public, they would be less candid and more circumspect in expressing their thoughts, which would impede the fulsome discussion of issues necessary to reach a well-reasoned decision.

Defendant's explanation for why release of the redacted material would allegedly chill the staff's ability to do their work is also far shorter, less detailed and less unequivocal than the explanation found both "vague" and "insufficiently specific" in *Project on Government*

16

*Oversight v. DHS*, Case No. l:18-CV-2051-RCL (Feb. 20, 2023), Memorandum Opinion, at pp.

16-17, https://ecf.dcd.uscourts.gov/cgi-bin/show_public_doc?2018cv2051-62, even though that

defendant in that case explained in more detail than the case at bar that disclosure would

"severely undermine" its "ability" to "investigate" violations of civil rights and civil liberties.

   In that case, the agency stated, in far more detail (at pg. 17) that:

   Court-ordered disclosure of the information would severely undermine the Department's
   ability to efficiently and effectively investigate allegations of civil rights or civil liberties
   violations, and for its investigators and decision-makers at various points of the
   decisional process outlined above to offer uninhibited opinions and recommendations on
   the matters at issue. Without the continued assurance of confidentiality, CRCL's expert
   consultants would not provide the Department with the meaningful information it needs
   to properly investigate civil rights complaints. Maintaining the confidentiality of these
   types of predecisional and deliberative communications is critical for the Department to
   carry out its mission…

   Disclosure of this information would chill the free and frank exchange of ideas and
   recommendations at DHS, including between CRCL's expert and CRCL, and between
   CRCL and the affected DHS component agencies that have been the subject of
   complaints that require investigation. Release of the information would severely
   undermine the Agency's ability to efficiently and effectively investigate allegations of
   civil rights or civil liberties violations, and for its investigators and decision-makers at
   various points of the decisional process ... to offer uninhibited opinions and
   recommendations on the matters at issue.

   Defendant's assertion of public confusion is also far less detailed and specific than that

found "insufficiently specific" in *Project on Government Oversight v. DHS*, Case No. l:18-CV-

2051-RCL (Feb. 20, 2023), Memorandum Opinion, at pg. 18, https://ecf.dcd.uscourts.gov/cgi-

bin/show_public_doc?2018cv2051-62, where the agency said:

   Moreover, release could cause unnecessary public confusion .... [T]he Reports contain
   the experts' preliminary findings and recommendations. The Reports contain the experts'
   unverified observations of first impression. For any number of reasons, the Department
   may not necessarily agree with, or adopt the experts' findings or recommendations. In the
   Department's view, release of the experts' preliminary findings and recommendations
   poses a substantial risk of confusing the public as to any eventual final actions of the
   Department concerning the complaints in question, or the reasons for them.

IV.     **Defendant Fails to Show that All Reasonably Segregable Non-Exempt Information Has Been Released.**

The Templeton declaration alleges in conclusory fashion that "FERC reasonably processed the responsive documents to Plaintiff in releasing all reasonably segregable non-exempt information from the documents responsive to Plaintiff's FOIA requests." Templeton Decl. ¶41. Yet FERC's withholdings of information in response to a FOIA request by the Institute for Energy Research for correspondence discussing the processing of two specific FOIA requests by the Institute for Energy Research ("IER") redact even the name of the requester, IER, which is self-evident from the request and production and, simply put, absurdly ineligible for a claim of reasonably foreseeable harm. See January 13, 2023 FOIA-2022-72 Discretionary Release at p. 3, attached hereto as Exhibit 1 (described in defendant's Vaughn Index entries for Doc. ## 1-2, 4-7). This calls into question defendant's redactions as well as its review.

But FERC's papers do not state who at FERC allegedly conducted the review of these records (other than, again, "attorneys," "GAL staff" and "staff", Templeton Declaration, ¶¶ 23-26) or what methodology may have been used, and the assertion that no further non-exempt information can be segregated and released is thus not only disproved by its withholding of "IER," conclusory and unexplained, but insufficiently supported. *See Stolt-Nielsen Transp. Grp., Ltd. v. U.S.*, 534 F.3d 728, 734 (D.C. Cir. 2008) (finding agency official's declaration that paralegal reviewed pages line-by-line to assure himself that he was withholding only exempt information to be insufficient for court to accept agency's segregability determinations); *Davin v. DOJ*, 60 F.3d 1043, 1052 (3d Cir. 1995) ("The statements regarding segregability are wholly conclusory, providing no information that would enable [plaintiff] to evaluate the FBI's decisions to withhold."); *Chesapeake Bay Found. v. U.S. Army Corps of Eng'rs*, 677 F. Supp. 2d 101, 109 (D.D.C. 2009) (requiring agency to supplement its declarations and exhibits because there was

"no evidence to support" that agency complied with its segregability obligation and refusing "to

take on faith" agency's assertions that it had complied); *United Am. Fin., Inc. v. Potter*, 531 F.

Supp. 2d 29, 44-45 (D.D.C. 2008) (rejecting agency's conclusory statement that all reasonably

segregable material was released because it failed to explain why factual information in an email

reporting or summarizing a telephone call, which was otherwise properly exempt under

deliberative process privilege, was not reasonably segregable); *ACLU v. FBI*, 429 F. Supp. 2d

179, 193 (D.D.C. 2006) (finding that agency did not establish that factual portions of email

messages were inextricably intertwined with material exempt as deliberative).

### V.   Defendant Fails to Set Forth Material Facts on Which Summary Judgment Can Be Granted.

Local Rule 7(h)(1) required defendant, if it wished to move for summary judgment, to set

forth the material facts on which summary judgment can be granted. That rule states, "Each

motion for summary judgment shall be accompanied by a statement of material facts as to which

the moving party contends there is no genuine issue." But defendant has listed virtually no facts

in its purported Statement of Material Facts Not in Dispute, ECF No. 17, instead discussing

merely the factual background giving rise to this lawsuit.

Its Statement of Facts merely discusses the submission of plaintiff's FOIA request, ¶1,

defendant's acknowledgment of its receipt, *id.* at ¶2, FERC's determination in response to

plaintiff's request, *id.* at ¶3, the fact that plaintiff filed an administrative appeal of that

determination, *id.* at ¶4, and the fact that defendant rejected plaintiff's administrative appeal, *id.*

at ¶5. Similarly, ¶6-9 sets forth the procedural history of Plaintiff's FOIA request, but contains

no "facts" upon which judgment may be granted.

But these undisputed facts merely show that defendant has released redacted records and

plaintiff properly brought this lawsuit – not that defendant is entitled to summary judgment in its

favor. Nothing in defendant's Statement of Facts addresses the allegations of the complaint, much less provides the specific information agencies must provide in litigation to obtain summary judgment, above and beyond what is required of an agency at the administrative level.[6]

Since defendant has failed to comply with the local rules governing summary judgment motions, this is an additional, independent reason to deny its motion.

CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment should be denied.

Respectfully submitted this the 20th day of June, 2023,

/s/ Matthew D. Hardin_____
Matthew D. Hardin, D.C. Bar # 1032711
Hardin Law Office
1725 I Street NW, Suite 300
Washington, DC 20006
(202) 802-1948
MatthewDHardin@gmail.com

---

[6] For example, agencies have no duty to provide a *Vaughn* Index or detailed affidavit or declaration at the administrative level, but they must do so to obtain summary judgment. *Compare Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973) (agency must produce index to justify withholdings) *with Bangoura v. U.S. Dep't of the Army*, 607 F. Supp. 2d 134, 143 n.8 (D.D.C. 2009) (agency is not required to provide Vaughn Index prior to filing of lawsuit); *Schwarz v. U.S. Dep't of Treasury*, 131 F. Supp. 2d 142, 147 (D.D.C. 2000) ("[T]here is no requirement that an agency provide a . . . 'Vaughn' index on an initial request for documents."), *summary affirmance granted*, No. 00-5453, 2001 WL 674636 (D.C. Cir. May 10, 2001).