**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

———————————————————————
|
INSTITUTE FOR ENERGY RESEARCH          |
|
*Plaintiff,*          |
|
v.          |          Civil Action No. 1:22-cv-3419 (CKK)
|
FEDERAL ENERGY REGULATORY          |
COMMISSION,          |
|
*Defendants.*          |
———————————————————————   |

**DECLARATION OF COUNSEL**
**IN SUPPORT OF MOTION FOR ATTORNEY'S FEES**

I, Christopher Horner, declare as follows:

1. I am over the age of 18 and competent to testify to the matters set forth herein.

2. I represent the Plaintiff, Institute for Energy Research ("IER"), in this matter.

3. I am fully familiar with this case and the litigation of all issues herein (Case No. 1:22-cv-
   2756, consolidated with 1:22-cv-3419).

4. In another case, *Institute for Energy Research v. Department of the Treasury*, et al, Case
   No:1:22-cv-3653 (D.D.C.) at ECF No. 23-12, the U.S. Attorney recently filed what
   appears to be a true and correct listing of my FOIA case history in the U.S. District Court
   for the District of Columbia, indicating that as of May 11, 2024 I have handled at least 91
   FOIA cases in the past decade in this Court. However, the U.S. Attorney's list of my
   cases does not account for cases before this Court in which I have provided legal advice
   but have not entered an appearance in litigation, and it also does not detail cases in which
   I have been counsel in courts other than this Court. It therefore understates my experience

1

with litigation under the Freedom of Information Act and similar state laws modeled after FOIA.

5. I have litigated federal Freedom of Information Act cases since 2000 and provided advice in several dozen more public record matters in multiple jurisdictions over the past approximately two decades. The bulk of time spent in my practice involves utilizing the Freedom of Information Act and similar state laws modeled after FOIA, and I have for years specialized in such cases.[1]

6. Attached hereto as Exhibit A are the two FOIA requests that were at issue in this case (FY22-72 and FY22-85).

7. Attached hereto as Exhibit B is the U.S. Attorney's Office's fees matrix, prepared by Brian Fitzpatrick, which is available at https://www.justice.gov/usao-dc/civil-division.

8. The FOIA requests that were at issue in this case pertain to an independent agency consulting with the White House on what to release and withhold in response to FOIA requests to said agency.

9. This subject generally and specifically the records I obtained on behalf of Plaintiff in this matter are of public importance for reasons including but not limited to educating the public on the level of coordination between, and a lack of public candor or transparency from, an independent agency (FERC) and the White House including but not limited to on Plaintiff's FOIA requests which drew much media attention and congressional

---

[1] See, e.g., "100 People to Watch This Fall" citing these FOIA efforts, The Hill, August 7, 2013; Erica Martinson, "Master of FOIA bedevils White House", Politico, June 28, 2013, https://www.politico.com/story/2013/06/chris-horner-foia-epa-white-house-093264.

oversight and which met serial and drawn-out if largely ultimately conceded, resistance to releasing public records.[2]

10. I graduated from Washington University in Saint Louis with a Juris Doctorate and was admitted to practice law in 1991.

11. Attached hereto as collective Exhibit C are true and correct copies of my logs of hours spent on the litigation of this matter, minus hours billed pertaining to Plaintiff's opposition to the Defendant's Motion for Summary Judgment, ECF No. 18, on which this Court ruled against Plaintiff. With the exception of that aforementioned removal, these logs were maintained in the separate matters contemporaneously with each task and updated throughout the pendency of this action, later combined into the attached. It is accurate as of today's date, but will continue to be updated until this case is closed.

12. All time recorded in the log was necessary, in the exercise of my best professional judgment, to pursue meritorious claims in this matter on behalf of my client. It is my belief based on the totality of the circumstances in this case, to a reasonable degree of legal certainty, and as specifically set forth herein that without the Plaintiff's efforts in litigation, the government would not have released the records at issue in this case. Indeed, the Complaint alleged that the government had repeatedly refused to release the

---

[2] These requests were part of a transparency project of Plaintiff with a dedicated website for broad public dissemination, https://www.instituteforenergyresearch.org/type/ferc/, which drew coverage in national news and major industry and political outlets, See, e.g., Editorial, "Richard Glick's White House Chats," *Wall Street Journal*, June 12, 2022, https://www.wsj.com/articles/richard-glicks-white-house-chats-federal-energy-regulatory-commission-climate-natural-gas-pipelines-11654875825; Catherine Morehouse, "White House: FERC's Phillips is 'acting chair'," Politico, October 5, 2023, https://subscriber.politicopro.com/article/2023/10/white-house-disputes-ferc-claim-that-phillips-is-chair-not-acting-00120163; "FERC Chairman Willie Phillips Finally Drops "Acting" from Title," Marcellus Drilling News, February 12, 2024, https://marcellusdrilling.com/2024/02/ferc-chairman-willie-phillips-finally-drops-acting-from-title/; Daniel Moore, "Threat of Summer Blackouts Looms Over FERC Chair's Renomination," Bloomberg.com, July 12, 2022, numerous 2023 items at RealClearEnergy.com at https://www.realclearenergy.org/authors/kevin_mooney/.

records in the administrative process, and the government ultimately brought itself into

compliance with FOIA only after it was forced to do so as part of the litigation process.

13. As a result of my work in this matter, Plaintiff ultimately received nine distinct records

totaling 18 pages (13 records were responsive to the two requests at issue inclusive of 4

duplicate records, and 27 total pages inclusive of 9 duplicate pages), documenting

valuable information including as described, *supra*.

14. I declare the foregoing to be true and correct to the best of my knowledge and belief

under pains and penalties of perjury.

Dated: August 8, 2024          /s/Christopher C. Horner
                               Christopher C. Horner



EXHIBIT
**A**



**1155 15th Street, NW Suite 900**
**Washington DC, 20005**

July 29, 2022

Lindsee Gentry, Director
Office of External Affairs
Federal Energy Regulatory Commission
Room 11H-1
888 First Street, NE
Washington, DC 20426

**By Fax:** 202-208-2106

**Copied to Email: foia-ceii@ferc.gov**

RE:   Certain Commission records: 'White House equities' correspondence/records

Public Records Officer,

On behalf of the Institute for Energy Research (IER), please consider this request pursuant to
the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq*.  IER is a non-profit public
policy institute organized under section 501(c)3 of the tax code and with research, publication
and other media functions, as well as a transparency initiative seeking public records relating
to environmental and energy policy and how policymakers use public resources, all of which
include broad dissemination of public information obtained under open records and freedom of
information laws. IER therefore also requests a fee waiver, on two bases in the alternative, as
described below, both of which FERC must address if it denies fee waiver.

Please provide us, within twenty working days,[1] copies of **all correspondence *between FERC
and the White House* (including any office therein, whether the Office of White House
Counsel, Office of Domestic Climate Policy, or other White House office or official),
seeking or otherwise pertaining to consultation with the White House on FERC's
processing of Freedom of Information Act requests *FOIA-2022-0024 and/or -0036*.**

**This does not seek the records on which FERC sought consultation, but only FERC's
correspondence accompanying those records, and subsequent responsive correspondence.**

---

[1] *See Citizens for Responsible Ethics in Washington v. Federal Election Commission*, 711 F.3d 180, 186
(D.C. Cir. 2013).

Any records responsive to this request are of great public interest after Commission Chairman Glick's testimony before the United States Senate Committee on Energy & Natural Resources on March 3, 2022, about FERC's controversial guidances and policy statements Policies to Guide Natural Gas Project Certifications pertaining to greenhouse gas emissions. Specifically, Senator Bill Cassidy of Louisiana asked the direct question, "has anyone higher up in the [Biden] administration ever spoken to you in regards to somehow slow-walking or otherwise impeding or otherwise accentuating policy that would have the effect of impeding the development of natural gas pipelines".

Commission Chairman Glick responded with an unambiguous no. This exchange ultimately led to substantial media and congressional interest. See, e.g., "Richard Glick's White House Chats," *Wall Street Journal*, June 12, 2022; Daniel Moore, "Threat of Summer Blackouts Looms Over FERC Chair's Renomination," Bloomberg.com, July 12, 2022; Catherine Morehouse, "GOP Probes FERC Chair Glick meetings with White House," Politico, June 29, 2022.

Further, these records are of great public interest for other reasons including, e.g., FERC's assertions to IER that FERC's failure to comply with FOIA in its processing of the above-cited requests was due to the need for "consult[ion] with other components of the agency." However, the current administration's aggressive invocation of "White House equities" to consult with the White House on what an agency should release and/or consider not releasing is well-documented. Indeed, another agency which received requests substantively identical to the above-cited IER requests has explained its delay expressly by claiming its consultation with the White House. Records responsive to this request will inform the public about this practice generally, and this instance specifically.

We seek *records*, specifically, and therefore request FERC not engage in the practice of redacting information it declares "non-responsive", which is not an enumerated exemption under FOIA.

These search parameters are sufficiently narrow and precise in their clear delineation for described correspondence over specific dates sent to or from specified FERC employees.

**Our request for fee waiver is in the alternative, first for reasons of public interest, and second, on the basis of IER's status as a media outlet**.[2] We do not seek the information for a commercial purpose. IER is organized and recognized by the Internal Revenue Service as a 501(c)3 educational organization. It has an active publishing function as well as a major effort in broadly disseminating public information, particularly as involves the "climate" agenda, energy and environment policy, and the intersection of these matters with activist lobbies. As such, the requester has no commercial interest possible in these records.

The below clearly demonstrates that:

> The requested information is of widespread public, media and legislative interest.

---

[2] See IER's webpage at https://instituteforenergyresearch.org to view its studies, analysis, YouTube publications and other information relevant to this determination.

2

Requester is a non-profit classified as such by the Internal Revenue Service. Requester does not seek these records for a commercial purpose and has no commercial interest possible in these records.

Requester intends to broadly disseminate the information requested.

This request is made to inform the public about an issue of great public interest, particularly the widely reported "Resistance" among career staff (including burrowed former political staff) who oppose the current administration's priorities, as well as the work by such public employees with outside allies in their shared struggle.

**IER first seeks waiver of any fees** under FOIA on that basis. Disclosure of records responsive to this request will contribute "significantly" to public understanding of government operations or activities. 5 U.S.C. § 552(a)(4)(A)(iii) ("Documents shall be furnished without any charge...if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of government and is not primarily in the commercial interest of the requester"); see also *inter alia* 10 C.F.R. Part 1004.9(a)(8).

**In the alternative**, IER requests waiver of its fees on the basis it is a media outlet.

**FERC must address both of these requests for fee waiver in the event it denies one; failure to do so is *prima facie* arbitrary and capricious**.

The provisions for determining whether a requesting party is a representative of the news media, and the "significant public interest" provision, are not mutually exclusive. Again, as IER is a non-commercial requester, it is entitled to liberal construction of the fee waiver standards. 5 U.S.C.S. § 552(a)(4)(A)(iii), *Perkins v. U.S. Department of Veterans Affairs*. Alternately and only in the event FERC refuses to waive our fees under the "significant public interest" test, which we would then appeal while requesting FERC proceed with processing on the grounds that we are a media organization, we request a waiver or limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by.... a representative of the news media…").

## Definition of Information Sought/Delivery Standards

**Please consider as responsive entire email "threads"** containing any information responsive to this request, regardless whether any part of that thread falls outside the cited time parameters.

We **do not seek** press clippings, releases or media items sent or received with no, or no substantive, comment elsewhere in the email thread (examples of non-substantive comments include those adding only "FYI," or "interesting"). **Therefore, please also treat any such records as non-responsive**.

As this matter involves a significant issue of public interest, please produce responsive

information as it becomes available on a rolling basis but consistent with the Act's prescribed timelines.

In the interests of expediting the search and processing of this Request, IER is willing to provisionally pay fees up to $200 in the event FERC denies our fee waiver *requests* detailed, *infra*, as we appeal such a determination.  Please provide an estimate of anticipated costs in the event that fees for processing this Request will exceed $200.  To keep costs and copying to a minimum **please provide copies of all productions to the email used to send this request.** Given the nature of the records responsive to this request, all should be in electronic format, and therefore there should be no photocopying costs (see discussion, *infra*).

**We request records on your system**, e.g., its backend logs, and do not seek only those records which survive on an employee's particular machine or account.

We do not demand your Office produce requested information in any particular form, instead **we request records in their native form, with specific reference to the U.S. Securities and Exchange Commission Data Delivery Standards.**[3]  The covered information we seek is electronic information, this includes electronic records, and other public information.

To quote the SEC Data Delivery Standards, "Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business. For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. **(*Note: An Adobe PDF file is not considered a native file unless the document was initially created as a PDF.*)**" (emphases in original).

In many native-format productions, certain public information remains contained in the record (e.g., metadata). Under the same standards, to ensure production of all information requested, if your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name, and, 2) make that unique metadata part of your production.

Native file productions may be produced without load files. However, native file productions must maintain the integrity of the original meta data, and must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. A separate folder should be provided for each custodian.

In the event that necessity requires your Office to produce a PDF file, due to your normal program for redacting certain information and such that native files cannot be produced as they are maintained in the normal course of business, in order to provide all requested information each PDF file should be produced in separate folders named by the custodian and accompanied by a load file to ensure the requested information appropriate for that discrete record is associated with that record. The required fields and format of the data to be provided within the load file can be found in Addendum A of the above-cited SEC Data Standards. All produced PDFs must be text searchable.

---

[3] https://www.sec.gov/divisions/enforce/datadeliverystandards.pdf.

4

**In the context of some government agencies' demonstrated practice of taking the effort to physically print, then poorly scan electronic mail into low-resolution, non-searchable PDF files**, we note that production of electronic records necessitates no such additional time, effort or other resources, and no photocopying expense. Any such effort as described is most reasonably viewed as an effort to frustrate the requester's use of the public information.

FOIA requests require no demonstration of wrongdoing, and the public interest prong of a FOIA response is the only aspect to which these factors are relevant; we address the public interest in the issue as relates to IER's **requests for fee waiver in the alternative** in detail, infra, and respectfully remind FERC that IER is a public interest organization as such that, at most, IER can be charged the costs of copying these records (for electronic records, those costs should be *de minimis*).

## FERC Owes Requester a Reasonable Search

FOIA requires an agency to make a reasonable search of records, judged by the specific facts surrounding each request. *See, e.g., Itrurralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003); *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994). In this situation, there should be no difficulty in finding these documents. While the exact location the documents are held is unknown to requester, FERC doubtless knows where to find correspondence of specific, identified employees and is in a position to ascertain whether its employees sent or received correspondence on a particular day.

## FERC Must Err on the Side of Disclosure

It is well-settled that Congress, through FOIA, "sought 'to open agency action to the light of public scrutiny.'" *DOJ v. Reporters Comm. for Freedom of Press*, 498 U.S. 749, 772 (1989) (*quoting Dep't of Air Force v. Rose*, 425 U.S. 353, 372 (1976)). The legislative history is replete with reference to the "'general philosophy of full agency disclosure'" that animates the statute. *Rose*, 425 U.S. at 360 (*quoting* S.Rep. No. 813, 89th Cong., 2nd Sess., 3 (1965)). Accordingly, when an agency withholds requested documents, the burden of proof is placed squarely on the agency, with all doubts resolved in favor of the requester. *See, e.g., Federal Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 352 (1979). This burden applies across scenarios and regardless of whether the agency is claiming an exemption under FOIA in whole or in part. *See, e.g., Tax Analysts*, 492 U.S. 136, 142 n. 3 (1989); *Consumer Fed'n of America v. Dep't of Agriculture*, 455 F.3d 283, 287 (D.C. Cir. 2006); *Burka*, 87 F.3d 508, 515 (D.C. Cir. 1996). The act is designed to "pierce the veil of administrative secrecy and to open agency action to the light of scrutiny." *Department of the Air Force v. Rose*, 425 U.S. 352 (1976). It is a transparency-forcing law, consistent with "the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Id.*

## Withholding and Redaction

Please identify and inform us of all responsive or potentially responsive records within the statutorily prescribed time, and the basis of any claimed exemptions or privilege and to

which specific responsive or potentially responsive record(s) such objection applies. Pursuant to high-profile and repeated promises and instructions from the previous President and Attorney General we request FERC err on the side of disclosure and not delay production of this information of great public interest through lengthy review processes over which withholdings they may be able to justify. In the unlikely event that FERC claims any records or portions thereof are exempt under any of FOIA's discretionary exemptions, we request you exercise that discretion and release them consistent with statements by the immediate-past President and Attorney General, *inter alia*, that "**The old rules said that if there was a defensible argument for not disclosing something to the American people, then it should not be disclosed. That era is now over, starting today" (President Barack Obama, January 21, 2009), and "Under the Attorney General's Guidelines, agencies are encouraged to make discretionary releases. Thus, even if an exemption would apply to a record, discretionary disclosures are encouraged**." (Department of Justice, Office of Information Policy, OIP Guidance, "Creating a 'New Era of Open Government'").

Nonetheless, if your office takes the position that any portion of the requested record(s) may be exempt from disclosure, please inform us of the basis of any partial denials or redactions, and provide the rest of the record, all reasonably segregable, non-exempt information, withholding only that information that is properly exempt under one of FOIA's nine exemptions. *See* 5 U.S.C. §552(b). We remind FERC that it cannot withhold entire documents rather than producing their "factual content" and redacting any information that is legally withheld under FOIA exemptions. As the D.C. Circuit Court of Appeals noted, the agency must "describe the factual content of the documents and disclose it or provide an adequate justification for concluding that it is not segregable from the exempt portions of the documents." *King v. Department of Justice*, 830 F.2d 210, at 254 n.28 (D.C. Cir. 1987). **As an example of how entire records should not be withheld when there is reasonably segregable information, we note that at bare minimum basic identifying information (that is "who, what, when" information, e.g., To, From, Date, and typically Subject) is not "deliberative".**

If it is your position that a document contains non-exempt segments and that those nonexempt segments are so dispersed throughout the documents as to make segregation impossible, please state what portion of the document is non-exempt and how the material is dispersed through the document. See *Mead Data Central v. Department of the Air Force*, 455 F. 2d 242, 261. Further, we request that you provide us with an index all such withheld documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1972), with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA" pursuant to *Founding Church of Scientology v. Bell*, 603 F.2d 945, 959(D.C. Cir. 1979), and "describ[ing] each document or portion thereof withheld, and for each withholding it must discuss the consequences of supplying the sought-after information." *King v. Department of Justice*, 830 F.2d at 223-24.

**Claims of non-segregability must be made with the same practical detail as required for claims of exemption in a Vaughn index.** If a record is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

6

Please provide responsive documents in complete form. Any burden on FERC will be lessened if it produces responsive records without redactions and in complete form.

### Requests for Fee Waiver in the Alternative

This extended fee waiver discussion is detailed as a result of our experience of agencies improperly using denial of fee waivers to impose an economic barrier to access, an improper means of delaying or otherwise denying access to public records to groups whose requests are, apparently, unwelcome, including and particularly IER. *It is only relevant if FERC considers denying our fee waiver request.*

**Disclosure would substantially contribute to the public at large's understanding of governmental operations or activities, on a matter of demonstrable public interest.**

IER's principal request for waiver or reduction of all costs is pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) ("Documents shall be furnished without any charge... if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of government and is not primarily in the commercial interest of the requester").

IER does not seek these records for a commercial purpose. Requester is organized and recognized by the Internal Revenue Service as 501(c)3 educational organization. As such, requester also has no commercial interest possible in these records. If no commercial interest exists, an assessment of that non-existent interest is not required in any balancing test with the public's interest.

As a non-commercial requester, IER is entitled to liberal construction of the fee waiver standards. 5 U.S.C.S. § 552(a)(4)(A)(iii), *Perkins v. U.S. Department of Veterans Affairs*, 754 F. Supp. 2d 1 (D.D.C. Nov. 30, 2010). The public interest fee waiver provision "is to be liberally construed in favor of waivers for noncommercial requesters." *McClellan Ecological Seepage Situation v. Carlucci*, 835 F. 2d 1284, 2184 (9th Cir. 1987). The Requester need not demonstrate that the records would contain any particular evidence, such as of misconduct. Instead, the question is whether the requested information is likely to contribute significantly to public understanding of the operations or activities of the government, period. *See Judicial Watch v. Rosotti*, 326 F. 3d 1309, 1314 (D.C. Cir 2003).

FOIA is aimed in large part at promoting active oversight roles of watchdog public advocacy groups. "The legislative history of the fee waiver provision reveals that it was added to FOIA 'in an attempt to prevent government agencies from using high fees to discourage certain types of requesters, and requests,' in particular those from journalists, scholars and nonprofit public interest groups." *Better Government Ass'n v. State*, 780 F.2d 86, 88-89 (D.C. Cir. 1986) (fee waiver intended to benefit public interest watchdogs), citing to *Ettlinger v. FBI*, 596 F. Supp. 867, 872 (D.Mass. 1984); S. COMM. ON THE JUDICIARY, AMENDING the FOIA, S. REP. NO. 854, 93rd Cong., 2d Sess. 11-12 (1974)).[4] "This is in keeping with the statute's

---

[4] This was grounded in the recognition that the two plaintiffs in that merged appeal were, like Requester, public interest non-profits that "rely heavily and frequently on FOIA and its fee waiver

purpose, which is 'to remove the roadblocks and technicalities which have been used by…
agencies to deny waivers.'" *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of
Educ.*, 593 F. Supp. 261, 268 (D.D.C. 2009), citing to *McClellan Ecological Seepage Situation
v. Carlucci*, 835 F.2d 1282, 1284 (9th. Cir. 1987) (quoting 132 Cong. Rec. S16496 (Oct. 15,
1986) (statement of Sen. Leahy).

Requester's ability — as well as many nonprofit organizations, educational institutions
and news media that will benefit from disclosure — to utilize FOIA depends on its ability to
obtain fee waivers. For this reason, "Congress explicitly recognized the importance and the
difficulty of access to governmental documents for such typically under-funded organizations
and individuals when it enacted the 'public benefit' test for FOIA fee waivers", a waiver
provision added to FOIA in an attempt to prevent government agencies from using high fees to
discourage certain types of requesters and requests including, most importantly for our
purposes, nonprofit public interest groups. *Better Government Ass'n v. State*, 780 F.2d 86, 88-
89 (D.C. Cir. 1986). Congress made clear its intent that fees should not be utilized to
discourage requests or to place obstacles in the way of such disclosure, forbidding the use of
fees as '"toll gates" on the public access road to information. *Id.*

As the *Better Government* court also recognized, public interest groups employ FOIA
for activities "essential to the performance of certain of their primary institutional activities --
publicizing governmental choices and highlighting possible abuses that otherwise might go
undisputed and thus unchallenged. These investigations are the necessary prerequisites to the
fundamental publicizing and mobilizing functions of these organizations. Access to information
through FOIA is vital to their organizational missions." *Id.* Congress enacted FOIA clearly
intending that "fees should not be used for the purpose of discouraging requests for information
or as obstacles to disclosure of requested information." *Ettlinger v. F.B.I.*, 596 F. Supp. 867,
872 (D. Mass. 1984), citing Conf. Comm. Rep., H.R. Rep. No. 1380, 93d Cong., 2d Sess. 8
(1974) at 8. Refusal of fees as a means of withholding records from a FOIA requester
constitutes improper withholding. *Id.* at 874.

Therefore, "insofar as… [agency] guidelines and standards in question act to discourage
FOIA requests and to impede access to information for precisely those groups Congress
intended to aid by the fee waiver provision, they inflict a continuing hardship on the non-profit
public interest groups who depend on FOIA to supply their lifeblood -- information." *Better
Gov't v. State* (internal citations omitted). The courts therefore will not permit such application
of FOIA requirements that "'chill' the ability and willingness of their organizations to engage in
activity that is not only voluntary, but that Congress explicitly wished to encourage." *Id*. As

---

provision to conduct the investigations that are essential to the performance of certain of their primary
institutional activities -- publicizing governmental choices and highlighting possible abuses that
otherwise might go undisputed and thus unchallenged. These investigations are the necessary
prerequisites to the fundamental publicizing and mobilizing functions of these organizations. Access to
information through FOIA is vital to their organizational missions." *Better Gov't v. State*. They
therefore, like Requester, "routinely make FOIA requests that potentially would not be made absent a
fee waiver provision", requiring the court to consider the "Congressional determination that such
constraints should not impede the access to information for appellants such as these." *Id*.

such, agency implementing regulations may not facially or in practice interpret FOIA's fee waiver provision in a way creating a fee barrier for Requester.

Courts have noted FOIA's legislative history to find that a fee waiver request is likely to pass muster "if the information disclosed is new; supports public oversight of agency operations, including the quality of agency activities and the effects of agency policy or regulations on public health or safety; or, otherwise confirms or clarifies data on past or present operations of the government." *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d at 1284-1286 (9th Cir. 1987).

This information request meets that description, for reasons both obvious and specified. As previously discussed, the information sought will provide important insights into the (independent) Commission's interactions with the White House on a recent, transformative Commission proposal and the Chairman's representations regarding same. The requested records will provide the public with original source knowledge concerning the above-described issue. The requested records thus clearly concern the operations and activities of government.

1) **The subject matter of the requested records specifically concerns identifiable operations or activities of the government**. Potentially responsive records will provide important insights into the (independent) Commission's work with interested, outside parties.

The Department of Justice Freedom of Information Act Guide concedes that this threshold is easily met. There can be no question that it is met here and that potentially responsive records unquestionably reflect "identifiable operations or activities of the government" with a connection that is direct and clear, not remote.

2) **Requester intends to broadly disseminate responsive information**. As demonstrated herein requester has both the intent and the ability to convey any information obtained through this request to the public. IER regularly publishes works and it and its experts are regularly cited in newspapers and trade and political publications, and appear on radio and television to discuss their work, and Requester intends to broadly disseminate public information obtained under this FOIA as it has other information relevant to its mission and work.

3) **Disclosure is "likely to contribute" to an understanding of specific government operations or activities because the releasable material will be meaningfully informative in relation to the subject matter of the request.** Requester intends to broadly disseminate responsive information. The requested records have an informative value and are "likely to contribute to an understanding of Federal government operations or activities," and as noted above this issue is of significant and increasing public interest.

However, **the Department of Justice's Freedom of Information Act Guide makes it clear that, in the DoJ's view, the "likely to contribute" determination hinges in substantial part on whether the requested documents provide information that is not already in the public domain**. It cannot be denied that, to the extent the requested information is available to any parties, it appears likely that this is information held only by FERC, is therefore clear that the requested records are "likely to contribute" to an understanding of your agency's decisions because they are not otherwise accessible other than through a FOIA request.

Thus, disclosure and dissemination of this information will facilitate meaningful public participation in the policy debate, therefore fulfilling the requirement that the documents requested be "meaningfully informative" and "likely to contribute" to an understanding of your agency's dealings with interested parties outside the agency and interested -- but not formally involved -- employees who may nonetheless be having an impact on the federal permitting process, state and local processes and/or activism on the issue.

**4) The disclosure will contribute to the understanding of the public at large, as opposed to merely that of the requester or a narrow segment of interested persons.**

Regular media coverage of and activist group expressions of concern over the subject of this request — the (independent) Commission's work with interested, outside parties — demonstrate that this is an issue of interest to the general public and not some small subset.

IER is dedicated to and has a documented record of promoting the public interest, advocating sensible policies to protect human health and the environment, broadly disseminating information relevant to the policy issues on which its experts work.

With a demonstrated interest and record in the relevant policy debates and expertise in the subject of energy- and environment-related regulatory policies, IER unquestionably has the "specialized knowledge" and "ability and intention" to disseminate the information requested in the broad manner, and to do so in a manner that contributes to the understanding of the "public at-large."

**5) The disclosure will contribute "significantly" to public understanding of government operations or activities**. *We repeat and incorporate here by reference the arguments above from the discussion of how disclosure is "likely to contribute" to an understanding of specific government operations or activities*.

Only by the FERC releasing this information will public interest groups such as Requester, other media, and the public at large see these terms first hand and draw their own conclusions concerning the (independent) Commission's work with interested, outside parties. The significance of this to the public understanding is vast, as it will allow the public to examine the details of these interactions to ascertain the degree of control outside actors might have over agency deliberations. Because IER has no commercial interests of any kind, disclosure can only result in serving the needs of the public interest.

**As such**, requester has stated "with reasonable specificity that its request pertains to operations of the government," and that it intends to broadly disseminate responsive records. "[T]he informative value of a request depends not on there being certainty of what the documents will reveal, but rather on the requesting party having explained with reasonable specificity how those documents would increase public knowledge of the functions of government." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Health and Human Services*, 481 F. Supp. 2d 99, 107-109 (D.D.C. 2006). We note that federal

agencies regularly waive fees for substantial productions arising from requests expressing the same intention using the same language as used in the instant request.[5]

The key to "media" fee waiver is whether a group publishes, as IER most surely does. *See supra*. In *National Security Archive v. Department of Defense*, 880 F.2d 1381 (D.C. Cir. 1989), the D.C. Circuit wrote:

> The relevant legislative history is simple to state: because one of the purposes of FIRA is to encourage the dissemination of information in Government files, as Senator Leahy (a sponsor) said: "It is critical that the phrase `representative of the news media' be broadly interpreted if the act is to work as expected.... If fact, *any person or organization which regularly publishes or disseminates information to the public ... should qualify for waivers as a `representative of the news media.'"*

*Id*. at 1385-86 (emphasis in original).

As the court in *Electronic Privacy Information Center v. Department of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003) noted, this test is met not only by outlets in the business of publishing such as newspapers; instead, citing to the *National Security Archives* court, it noted one key fact is determinative, the "*plan to act, in essence, as a publisher*, both in print and other media." *EPIC v. DOD,* 241 F.Supp.2d at 10 (*emphases* added). "In short, the court of appeals in National Security Archive held that '[a] representative of the news media is, in essence, a person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience.'" *Id*. at 11. *See also, Media Access Project v. FCC*, 883 F.2d 1063, 1065 (D.C. Cir. 1989).

For these reasons, requester qualifies as a "representative[] of the news media" under the statutory definition, because it routinely gathers information of interest to the public, uses editorial skills to turn it into distinct work, and distributes that work to the public. *See EPIC v. Dep't of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003)(non-profit organization that gathered information and published it in newsletters and otherwise for general distribution qualified as representative of news media for purpose of limiting fees). Courts have reaffirmed that non-profit requesters who are not traditional news media outlets can qualify as representatives of the new media for purposes of the FOIA, particularly after the 2007 amendments to FOIA. *See*

---

[5] *See, e.g.*, no fees required by other agencies for processing often substantial numbers of records on the same or nearly the same but less robust waiver-request language include: **DoI** OS-2012-00113, OS-2012-00124, OS-2012-00172, FWS-2012-00380, BLM-2014-00004, BLM-2012-016, BLM: EFTS 2012-00264, CASO 2012-00278, NVSO 2012-00277; **NOAA** 2013-001089, 2013-000297, 2013-000298, 2010-0199, and "Peterson-Stocker letter" FOIA (August 6, 2012 request, no tracking number assigned, records produced); **DoL** (689053, 689056, 691856 (all from 2012)); **FERC** 14-10; **DoE** HQ-2010-01442-F, 2010-00825-F, HQ-2011-01846, HQ-2012-00351-F, HQ-2014-00161-F, HQ-2010-0096-F, GO-09-060, GO-12-185, HQ-2012-00707-F; **NSF** (10-141); **OSTP** 12-21, 12-43, 12-45, 14-02.; **EPA** HQ-2013-000606, HQ-FOI-01087-12, HQ-2013-001343, R6-2013-00361, R6-2013-00362, R6-2013-00363, HQ-FOI-01312-10, R9-2013-007631, HQ-FOI-01268-12, HQ-FOI-01269, HQ-FOI-01270-12, HQ-2014-006434. These latter examples involve EPA either waiving fees, not addressing the fee issue, or denying fee waiver but dropping that posture when requester sued.

*ACLU of Washington v. U.S. Dep't of Justice*, No. C09-0642RSL, 2011, 2011 U.S. Dist. LEXIS 26047 at *32 (W.D. Wash. Mar. 10, 2011). *See also Serv. Women's Action Network v. DOD*, 2012 U.S. Dist. Lexis 45292 (D. Conn., Mar. 30, 2012).

Accordingly, any fees charged must be limited to duplication costs. The records requested are available electronically and are requested in electronic format, so there should be no costs.

## Conclusion

We expect the FERC to release within the statutory period of time all responsive records, withholding only segregable portions of any that might contain properly exempt information, and to provide information that may be withheld under FOIA's discretionary provisions, and otherwise proceed with a bias toward disclosure, consistent with the law's clear intent, judicial precedent affirming this bias, and former President Obama's directive to all federal agencies on January 26, 2009. Memo to the Heads of Exec. Offices and Agencies, Freedom of Information Act, 74 Fed. Reg. 4683 (Jan. 26, 2009)("The Freedom of Information Act should be administered with a clear presumption: in the face of doubt, openness prevails. The Government should not keep information confidential merely because public officials might be embarrassed by disclosure, or because of speculative or abstract fears.").

**We expect all aspects of this request including the search for responsive records be processed free from conflict of interest (i.e., the Commission should not simply rely upon a request of the party/ parties whose correspondence is at issue in the request what they might have that is responsive).**

We request the FERC to provide particularized assurance that it is reviewing some quantity of records with an eye toward production on some estimated schedule, so as to establish some reasonable belief that it is processing our request. 5 U.S.C.A. § 552(a)(6)(A)(i); see also *CREW v. FEC*. The FERC must at least inform us of the scope of potentially responsive records, including the scope of the records it plans to produce and the scope of documents that it plans to withhold under any FOIA exemptions; FOIA specifically requires the FERC to immediately notify IER with a particularized and substantive determination, and of its determination and its reasoning, as well as IER's right to appeal; further, FOIA's unusual circumstances safety valve to extend time to make a determination, and its exceptional circumstances safety valve providing additional time for a diligent agency to complete its review of records, indicate that responsive documents must be collected, examined, and reviewed in order to constitute a determination. *See Citizens for Responsible Ethics in Washington v. Federal Election Commission*, 711 F.3d 180, 186 (D.C. Cir. 2013). *See also*, *Muttitt v. U.S. Central Command*, 813 F. Supp. 2d 221; 2011 U.S. Dist. LEXIS 110396 at *14 (D.D.C. Sept. 28, 2011)(addressing "the statutory requirement that [agencies] provide estimated dates of completion").

We request a rolling production of records, such that the agency furnishes records to my attention as soon as they are identified, preferably electronically, but as needed then to my attention, at the address below. We inform the FERC of our intention to protect our appellate

rights on this matter at the earliest date should the FERC not comply with FOIA per, *e.g.*, *CREW v. Fed. Election Comm'n*, 711 F.3d 180 (D.C. Cir. 2013).

      If you have any questions please do not hesitate to contact me. I look forward to your timely response.

Sincerely,

Thomas J. Pyle
tpyle@ierdc.org
202.621.2952



**1155 15th Street, NW Suite 900**
**Washington DC, 20005**

August 12, 2022

Lindsee Gentry, Director
Office of External Affairs
Federal Energy Regulatory Commission
Room 11H-1
888 First Street, NE
Washington, DC 20426

**By Fax:** 202-208-2106

**Copied to Email: foia-ceii@ferc.gov**

RE:   Certain Commission records re "consultation" with the White House

Public Records Officer,

On behalf of the Institute for Energy Research (IER), please consider this request pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq*.  IER is a non-profit public policy institute organized under section 501(c)3 of the tax code and with research, publication and other media functions, as well as a transparency initiative seeking public records relating to environmental and energy policy and how policymakers use public resources, all of which include broad dissemination of public information obtained under open records and freedom of information laws. IER therefore also requests a fee waiver, on two bases in the alternative, as described below, both of which FERC must address if it denies fee waiver.

Please provide us, within twenty working days,[1] copies of **all correspondence *between FERC and the White House* (including any office therein, whether the Office of White House Counsel, Office of Domestic Climate Policy, or other White House office or official), seeking or otherwise pertaining to consultation with the White House on FERC's processing of *any* Freedom of Information Act request, from January 21, 2021, through August 12, 2022, inclusive.**

---

[1] *See Citizens for Responsible Ethics in Washington v. Federal Election Commission*, 711 F.3d 180, 186 (D.C. Cir. 2013).

**This does not seek the records on which FERC sought consultation, but only FERC's correspondence accompanying those records, and subsequent responsive correspondence.**

**Please note that, due to recent interactions with FERC pertaining to other FOIA requests IER will receive any claim by FERC that it is consolidating this request with any request preceding it as a consolidation of this request with the earlier request's date of sending and receipt, not the later (*i.e.*, IER will deem FERC as accepting that this request was also sent and received on the date that prior, purportedly consolidated request was sent).**

Entire Threads/Reachback: This request seeks those described records which are dated at any time from January 21, 2021, through August 15, 2022, inclusive. However, FERC should not truncate any email "threads" containing any correspondence meeting this description, should any portion of that thread extend back in time further than January 21, 2021, or, by the time you process this, forward beyond August 12, 2022: we specifically seek the entirety of any email "threads" containing any correspondence meeting this description, however far back in time any portion of that thread extends.

Any records responsive to this request are of great public interest after Commission Chairman Glick's testimony before the United States Senate Committee on Energy & Natural Resources on March 3, 2022, about FERC's controversial guidances and policy statements Policies to Guide Natural Gas Project Certifications pertaining to greenhouse gas emissions. Specifically, Senator Bill Cassidy of Louisiana asked the direct question, "has anyone higher up in the [Biden] administration ever spoken to you in regards to somehow slow-walking or otherwise impeding or otherwise accentuating policy that would have the effect of impeding the development of natural gas pipelines".

Commission Chairman Glick responded with an unambiguous no. This exchange ultimately led to substantial media and congressional interest. See, e.g., "Richard Glick's White House Chats," *Wall Street Journal*, June 12, 2022; Daniel Moore, "Threat of Summer Blackouts Looms Over FERC Chair's Renomination," Bloomberg.com, July 12, 2022; Catherine Morehouse, "GOP Probes FERC Chair Glick meetings with White House," Politico, June 29, 2022.

Further, these records are of great public interest for other reasons including, e.g., FERC's assertions to IER that FERC's failure to comply with FOIA in its processing of the above-cited requests was due to the need for "consult[ion] with other components of the agency." However, the current administration's aggressive invocation of "White House equities" to consult with the White House on what an agency should release and/or consider not releasing is well-documented. Indeed, another agency which received requests substantively identical to the above-cited IER requests has explained its delay expressly by claiming its consultation with the White House. Records responsive to this request will inform the public about this practice generally, and this instance specifically.

We seek *records*, specifically, and therefore request FERC not engage in the practice of redacting information it declares "non-responsive", which is not an enumerated exemption under FOIA.

2

These search parameters are sufficiently narrow and precise in their clear delineation for described correspondence over specific dates sent to or from specified FERC employees.

**Our request for fee waiver is in the alternative, first for reasons of public interest, and second, on the basis of IER's status as a media outlet**.[2] We do not seek the information for a commercial purpose. IER is organized and recognized by the Internal Revenue Service as a 501(c)3 educational organization. It has an active publishing function as well as a major effort in broadly disseminating public information, particularly as involves the "climate" agenda, energy and environment policy, and the intersection of these matters with activist lobbies. As such, the requester has no commercial interest possible in these records.

The below clearly demonstrates that:

> The requested information is of widespread public, media and legislative interest.
> Requester is a non-profit classified as such by the Internal Revenue Service.
> Requester does not seek these records for a commercial purpose and has no commercial interest possible in these records.

Requester intends to broadly disseminate the information requested.

This request is made to inform the public about an issue of great public interest, particularly the widely reported "Resistance" among career staff (including burrowed former political staff) who oppose the current administration's priorities, as well as the work by such public employees with outside allies in their shared struggle.

**IER first seeks waiver of any fees** under FOIA on that basis. Disclosure of records responsive to this request will contribute "significantly" to public understanding of government operations or activities. 5 U.S.C. § 552(a)(4)(A)(iii) ("Documents shall be furnished without any charge...if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of government and is not primarily in the commercial interest of the requester"); see also *inter alia* 10 C.F.R. Part 1004.9(a)(8).

**In the alternative**, IER requests waiver of its fees on the basis it is a media outlet.

**FERC must address both of these requests for fee waiver in the event it denies one; failure to do so is *prima facie* arbitrary and capricious**.

The provisions for determining whether a requesting party is a representative of the news media, and the "significant public interest" provision, are not mutually exclusive. Again, as IER is a non-commercial requester, it is entitled to liberal construction of the fee waiver standards. 5 U.S.C.S. § 552(a)(4)(A)(iii), *Perkins v. U.S. Department of Veterans Affairs*. Alternately and only in the event FERC refuses to waive our fees under the "significant public interest" test,

---

[2] See IER's webpage at https://instituteforenergyresearch.org to view its studies, analysis, YouTube publications and other information relevant to this determination.

which we would then appeal while requesting FERC proceed with processing on the grounds that we are a media organization, we request a waiver or limitation of processing fees pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)("fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by.... a representative of the news media…").

**Definition of Information Sought/Delivery Standards**

   **Please consider as responsive entire email "threads"** containing any information responsive to this request, regardless whether any part of that thread falls outside the cited time parameters.
   We **do not seek** press clippings, releases or media items sent or received with no, or no substantive, comment elsewhere in the email thread (examples of non-substantive comments include those adding only "FYI", or "interesting"). **Therefore, please also treat any such records as non-responsive**.

   As this matter involves a significant issue of public interest, please produce responsive information as it becomes available on a rolling basis but consistent with the Act's prescribed timelines.

   In the interests of expediting the search and processing of this Request, IER is willing to provisionally pay fees up to $200 in the event FERC denies our fee waiver *requests* detailed, *infra*, as we appeal such a determination.  Please provide an estimate of anticipated costs in the event that fees for processing this Request will exceed $200.  To keep costs and copying to a minimum **please provide copies of all productions to the email used to send this request.** Given the nature of the records responsive to this request, all should be in electronic format, and therefore there should be no photocopying costs (see discussion, *infra*).

   **We request records on your system**, e.g., its backend logs, and do not seek only those records which survive on an employee's particular machine or account.

   We do not demand your Office produce requested information in any particular form, instead **we request records in their native form, with specific reference to the U.S. Securities and Exchange Commission Data Delivery Standards.**[3]  The covered information we seek is electronic information, this includes electronic records, and other public information.

   To quote the SEC Data Delivery Standards, "Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business. For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. (***Note: An Adobe PDF file is not considered a native file unless the document was initially created as a PDF.***)" (emphases in original).

   In many native-format productions, certain public information remains contained in the record (e.g., metadata). Under the same standards, to ensure production of all information

---

[3] https://www.sec.gov/divisions/enforce/datadeliverystandards.pdf.

requested, if your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name, and, 2) make that unique metadata part of your production.

Native file productions may be produced without load files. However, native file productions must maintain the integrity of the original meta data, and must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. A separate folder should be provided for each custodian.

In the event that necessity requires your Office to produce a PDF file, due to your normal program for redacting certain information and such that native files cannot be produced as they are maintained in the normal course of business, in order to provide all requested information each PDF file should be produced in separate folders named by the custodian and accompanied by a load file to ensure the requested information appropriate for that discrete record is associated with that record. The required fields and format of the data to be provided within the load file can be found in Addendum A of the above-cited SEC Data Standards. All produced PDFs must be text searchable.

**In the context of some government agencies' demonstrated practice of taking the effort to physically print, then poorly scan electronic mail into low-resolution, non-searchable PDF files**, we note that production of electronic records necessitates no such additional time, effort or other resources, and no photocopying expense. Any such effort as described is most reasonably viewed as an effort to frustrate the requester's use of the public information.

FOIA requests require no demonstration of wrongdoing, and the public interest prong of a FOIA response is the only aspect to which these factors are relevant; we address the public interest in the issue as relates to IER's **requests for fee waiver in the alternative** in detail, infra, and respectfully remind FERC that IER is a public interest organization as such that, at most, IER can be charged the costs of copying these records (for electronic records, those costs should be *de minimis*).

## FERC Owes Requester a Reasonable Search

FOIA requires an agency to make a reasonable search of records, judged by the specific facts surrounding each request. *See, e.g., Itrurralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003); *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994). In this situation, there should be no difficulty in finding these documents. While the exact location the documents are held is unknown to requester, FERC doubtless knows where to find correspondence of specific, identified employees and is in a position to ascertain whether its employees sent or received correspondence on a particular day.

## FERC Must Err on the Side of Disclosure

It is well-settled that Congress, through FOIA, "sought 'to open agency action to the light of public scrutiny.'" *DOJ v. Reporters Comm. for Freedom of Press*, 498 U.S. 749, 772 (1989)

(*quoting Dep't of Air Force v. Rose*, 425 U.S. 353, 372 (1976)). The legislative history is replete with reference to the "'general philosophy of full agency disclosure'" that animates the statute. *Rose*, 425 U.S. at 360 (*quoting* S.Rep. No. 813, 89th Cong., 2nd Sess., 3 (1965)). Accordingly, when an agency withholds requested documents, the burden of proof is placed squarely on the agency, with all doubts resolved in favor of the requester. *See, e.g., Federal Open Mkt. Comm. v. Merrill*, 443 U.S. 340, 352 (1979). This burden applies across scenarios and regardless of whether the agency is claiming an exemption under FOIA in whole or in part. *See, e.g., Tax Analysts*, 492 U.S. 136, 142 n. 3 (1989); *Consumer Fed'n of America v. Dep't of Agriculture*, 455 F.3d 283, 287 (D.C. Cir. 2006); *Burka*, 87 F.3d 508, 515 (D.C. Cir. 1996). The act is designed to "pierce the veil of administrative secrecy and to open agency action to the light of scrutiny." *Department of the Air Force v. Rose*, 425 U.S. 352 (1976). It is a transparency-forcing law, consistent with "the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Id.*

Withholding and Redaction

Please identify and inform us of all responsive or potentially responsive records within the statutorily prescribed time, and the basis of any claimed exemptions or privilege and to which specific responsive or potentially responsive record(s) such objection applies. Pursuant to high-profile and repeated promises and instructions from the previous President and Attorney General we request FERC err on the side of disclosure and not delay production of this information of great public interest through lengthy review processes over which withholdings they may be able to justify. In the unlikely event that FERC claims any records or portions thereof are exempt under any of FOIA's discretionary exemptions, we request you exercise that discretion and release them consistent with statements by the immediate-past President and Attorney General, *inter alia*, that "**The old rules said that if there was a defensible argument for not disclosing something to the American people, then it should not be disclosed. That era is now over, starting today" (President Barack Obama, January 21, 2009), and "Under the Attorney General's Guidelines, agencies are encouraged to make discretionary releases. Thus, even if an exemption would apply to a record, discretionary disclosures are encouraged**." (Department of Justice, Office of Information Policy, OIP Guidance, "Creating a 'New Era of Open Government'").

Nonetheless, if your office takes the position that any portion of the requested record(s) may be exempt from disclosure, please inform us of the basis of any partial denials or redactions, and provide the rest of the record, all reasonably segregable, non-exempt information, withholding only that information that is properly exempt under one of FOIA's nine exemptions. *See* 5 U.S.C. §552(b). We remind FERC that it cannot withhold entire documents rather than producing their "factual content" and redacting any information that is legally withheld under FOIA exemptions. As the D.C. Circuit Court of Appeals noted, the agency must "describe the factual content of the documents and disclose it or provide an adequate justification for concluding that it is not segregable from the exempt portions of the documents." *King v. Department of Justice*, 830 F.2d 210, at 254 n.28 (D.C. Cir. 1987). **As an example of how entire records should not be withheld when there is reasonably segregable information, we note that at bare minimum basic identifying information (that is "who, what, when" information, e.g., To, From, Date, and typically Subject) is not "deliberative".**

If it is your position that a document contains non-exempt segments and that those nonexempt segments are so dispersed throughout the documents as to make segregation impossible, please state what portion of the document is non-exempt and how the material is dispersed through the document. See *Mead Data Central v. Department of the Air Force*, 455 F. 2d 242, 261. Further, we request that you provide us with an index all such withheld documents as required under *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1972), with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA" pursuant to *Founding Church of Scientology v. Bell*, 603 F.2d 945, 959(D.C. Cir. 1979), and "describ[ing] each document or portion thereof withheld, and for each withholding it must discuss the consequences of supplying the sought-after information." *King v. Department of Justice*, 830 F.2d at 223-24.

**Claims of non-segregability must be made with the same practical detail as required for claims of exemption in a Vaughn index.** If a record is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

Please provide responsive documents in complete form. Any burden on FERC will be lessened if it produces responsive records without redactions and in complete form.

<u>**Requests for Fee Waiver in the Alternative**</u>

This extended fee waiver discussion is detailed as a result of our experience of agencies improperly using denial of fee waivers to impose an economic barrier to access, an improper means of delaying or otherwise denying access to public records to groups whose requests are, apparently, unwelcome, including and particularly IER. *It is only relevant if FERC considers denying our fee waiver request.*

**Disclosure would substantially contribute to the public at large's understanding of governmental operations or activities, on a matter of demonstrable public interest.**

IER's principal request for waiver or reduction of all costs is pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) ("Documents shall be furnished without any charge... if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of government and is not primarily in the commercial interest of the requester").

IER does not seek these records for a commercial purpose. Requester is organized and recognized by the Internal Revenue Service as 501(c)3 educational organization. As such, requester also has no commercial interest possible in these records. If no commercial interest exists, an assessment of that non-existent interest is not required in any balancing test with the public's interest.

As a non-commercial requester, IER is entitled to liberal construction of the fee waiver standards. 5 U.S.C.S. § 552(a)(4)(A)(iii), *Perkins v. U.S. Department of Veterans Affairs*, 754 F. Supp. 2d 1 (D.D.C. Nov. 30, 2010). The public interest fee waiver provision "is to be liberally construed in favor of waivers for noncommercial requesters." *McClellan Ecological Seepage Situation v. Carlucci*, 835 F. 2d 1284, 2184 (9th Cir. 1987). The Requester need not

demonstrate that the records would contain any particular evidence, such as of misconduct. Instead, the question is whether the requested information is likely to contribute significantly to public understanding of the operations or activities of the government, period. *See Judicial Watch v. Rosotti*, 326 F. 3d 1309, 1314 (D.C. Cir 2003).

FOIA is aimed in large part at promoting active oversight roles of watchdog public advocacy groups. "The legislative history of the fee waiver provision reveals that it was added to FOIA 'in an attempt to prevent government agencies from using high fees to discourage certain types of requesters, and requests,' in particular those from journalists, scholars and nonprofit public interest groups." *Better Government Ass'n v. State*, 780 F.2d 86, 88-89 (D.C. Cir. 1986) (fee waiver intended to benefit public interest watchdogs), citing to *Ettlinger v. FBI*, 596 F. Supp. 867, 872 (D.Mass. 1984); S. COMM. ON THE JUDICIARY, AMENDING the FOIA, S. REP. NO. 854, 93rd Cong., 2d Sess. 11-12 (1974)).[4] "This is in keeping with the statute's purpose, which is 'to remove the roadblocks and technicalities which have been used by… agencies to deny waivers.'" *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Educ.*, 593 F. Supp. 261, 268 (D.D.C. 2009), citing to *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1284 (9th. Cir. 1987) (quoting 132 Cong. Rec. S16496 (Oct. 15, 1986) (statement of Sen. Leahy).

Requester's ability — as well as many nonprofit organizations, educational institutions and news media that will benefit from disclosure — to utilize FOIA depends on its ability to obtain fee waivers. For this reason, "Congress explicitly recognized the importance and the difficulty of access to governmental documents for such typically under-funded organizations and individuals when it enacted the 'public benefit' test for FOIA fee waivers", a waiver provision added to FOIA in an attempt to prevent government agencies from using high fees to discourage certain types of requesters and requests including, most importantly for our purposes, nonprofit public interest groups. *Better Government Ass'n v. State*, 780 F.2d 86, 88-89 (D.C. Cir. 1986).  Congress made clear its intent that fees should not be utilized to discourage requests or to place obstacles in the way of such disclosure, forbidding the use of fees as '"toll gates" on the public access road to information. *Id.*

As the *Better Government* court also recognized, public interest groups employ FOIA for activities "essential to the performance of certain of their primary institutional activities -- publicizing governmental choices and highlighting possible abuses that otherwise might go undisputed and thus unchallenged. These investigations are the necessary prerequisites to the fundamental publicizing and mobilizing functions of these organizations. Access to information

---

[4] This was grounded in the recognition that the two plaintiffs in that merged appeal were, like Requester, public interest non-profits that "rely heavily and frequently on FOIA and its fee waiver provision to conduct the investigations that are essential to the performance of certain of their primary institutional activities -- publicizing governmental choices and highlighting possible abuses that otherwise might go undisputed and thus unchallenged. These investigations are the necessary prerequisites to the fundamental publicizing and mobilizing functions of these organizations. Access to information through FOIA is vital to their organizational missions." *Better Gov't v. State*. They therefore, like Requester, "routinely make FOIA requests that potentially would not be made absent a fee waiver provision", requiring the court to consider the "Congressional determination that such constraints should not impede the access to information for appellants such as these." *Id.*

through FOIA is vital to their organizational missions." *Id.* Congress enacted FOIA clearly intending that "fees should not be used for the purpose of discouraging requests for information or as obstacles to disclosure of requested information." *Ettlinger v. F.B.I.*, 596 F. Supp. 867, 872 (D. Mass. 1984), citing Conf. Comm. Rep., H.R. Rep. No. 1380, 93d Cong., 2d Sess. 8 (1974) at 8. Refusal of fees as a means of withholding records from a FOIA requester constitutes improper withholding. *Id.* at 874.

Therefore, "insofar as… [agency] guidelines and standards in question act to discourage FOIA requests and to impede access to information for precisely those groups Congress intended to aid by the fee waiver provision, they inflict a continuing hardship on the non-profit public interest groups who depend on FOIA to supply their lifeblood -- information." *Better Gov't v. State* (internal citations omitted). The courts therefore will not permit such application of FOIA requirements that "'chill' the ability and willingness of their organizations to engage in activity that is not only voluntary, but that Congress explicitly wished to encourage." *Id.* As such, agency implementing regulations may not facially or in practice interpret FOIA's fee waiver provision in a way creating a fee barrier for Requester.

Courts have noted FOIA's legislative history to find that a fee waiver request is likely to pass muster "if the information disclosed is new; supports public oversight of agency operations, including the quality of agency activities and the effects of agency policy or regulations on public health or safety; or, otherwise confirms or clarifies data on past or present operations of the government." *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d at 1284-1286 (9th Cir. 1987).

This information request meets that description, for reasons both obvious and specified. As previously discussed, the information sought will provide important insights into the (independent) Commission's interactions with the White House on a recent, transformative Commission proposal and the Chairman's representations regarding same. The requested records will provide the public with original source knowledge concerning the above-described issue. The requested records thus clearly concern the operations and activities of government.

1) **The subject matter of the requested records specifically concerns identifiable operations or activities of the government**. Potentially responsive records will provide important insights into the (independent) Commission's work with interested, outside parties.

The Department of Justice Freedom of Information Act Guide concedes that this threshold is easily met. There can be no question that it is met here and that potentially responsive records unquestionably reflect "identifiable operations or activities of the government" with a connection that is direct and clear, not remote.

2) **Requester intends to broadly disseminate responsive information**. As demonstrated herein requester has both the intent and the ability to convey any information obtained through this request to the public. IER regularly publishes works and it and its experts are regularly cited in newspapers and trade and political publications, and appear on radio and television to discuss their work, and Requester intends to broadly disseminate public information obtained under this FOIA as it has other information relevant to its mission and work.

9

**3) Disclosure is "likely to contribute" to an understanding of specific government operations or activities because the releasable material will be meaningfully informative in relation to the subject matter of the request.** Requester intends to broadly disseminate responsive information. The requested records have an informative value and are "likely to contribute to an understanding of Federal government operations or activities," and as noted above this issue is of significant and increasing public interest.

However, **the Department of Justice's Freedom of Information Act Guide makes it clear that, in the DoJ's view, the "likely to contribute" determination hinges in substantial part on whether the requested documents provide information that is not already in the public domain**. It cannot be denied that, to the extent the requested information is available to any parties, it appears likely that this is information held only by FERC, is therefore clear that the requested records are "likely to contribute" to an understanding of your agency's decisions because they are not otherwise accessible other than through a FOIA request.

Thus, disclosure and dissemination of this information will facilitate meaningful public participation in the policy debate, therefore fulfilling the requirement that the documents requested be "meaningfully informative" and "likely to contribute" to an understanding of your agency's dealings with interested parties outside the agency and interested -- but not formally involved -- employees who may nonetheless be having an impact on the federal permitting process, state and local processes and/or activism on the issue.

**4) The disclosure will contribute to the understanding of the public at large, as opposed to merely that of the requester or a narrow segment of interested persons.**

Regular media coverage of and activist group expressions of concern over the subject of this request — the (independent) Commission's work with interested, outside parties — demonstrate that this is an issue of interest to the general public and not some small subset.

IER is dedicated to and has a documented record of promoting the public interest, advocating sensible policies to protect human health and the environment, broadly disseminating information relevant to the policy issues on which its experts work.

With a demonstrated interest and record in the relevant policy debates and expertise in the subject of energy- and environment-related regulatory policies, IER unquestionably has the "specialized knowledge" and "ability and intention" to disseminate the information requested in the broad manner, and to do so in a manner that contributes to the understanding of the "public at-large."

5) **The disclosure will contribute "significantly" to public understanding of government operations or activities**. *We repeat and incorporate here by reference the arguments above from the discussion of how disclosure is "likely to contribute" to an understanding of specific government operations or activities*.

Only by the FERC releasing this information will public interest groups such as Requester, other media, and the public at large see these terms first hand and draw their own conclusions concerning the (independent) Commission's work with interested, outside parties.

The significance of this to the public understanding is vast, as it will allow the public to examine the details of these interactions to ascertain the degree of control outside actors might have over agency deliberations. Because IER has no commercial interests of any kind, disclosure can only result in serving the needs of the public interest.

**As such**, requester has stated "with reasonable specificity that its request pertains to operations of the government," and that it intends to broadly disseminate responsive records. "[T]he informative value of a request depends not on there being certainty of what the documents will reveal, but rather on the requesting party having explained with reasonable specificity how those documents would increase public knowledge of the functions of government." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Health and Human Services*, 481 F. Supp. 2d 99, 107-109 (D.D.C. 2006). We note that federal agencies regularly waive fees for substantial productions arising from requests expressing the same intention using the same language as used in the instant request.[5]

The key to "media" fee waiver is whether a group publishes, as IER most surely does. *See supra*. In *National Security Archive v. Department of Defense*, 880 F.2d 1381 (D.C. Cir. 1989), the D.C. Circuit wrote:

> The relevant legislative history is simple to state: because one of the purposes of FIRA is to encourage the dissemination of information in Government files, as Senator Leahy (a sponsor) said: "It is critical that the phrase `representative of the news media' be broadly interpreted if the act is to work as expected.... If fact, *any person or organization which regularly publishes or disseminates information to the public ... should qualify for waivers as a `representative of the news media.'*"

*Id*. at 1385-86 (emphasis in original).

As the court in *Electronic Privacy Information Center v. Department of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003) noted, this test is met not only by outlets in the business of publishing such as newspapers; instead, citing to the *National Security Archives* court, it noted one key fact is determinative, the "*plan to act, in essence, as a publisher*," both in print and other media." *EPIC v. DOD*, 241 F.Supp.2d at 10 (*emphases* added). "In short, the court of appeals in National Security Archive held that '[a] representative of the news media is, in essence, a person

---

[5] *See, e.g.*, no fees required by other agencies for processing often substantial numbers of records on the same or nearly the same but less robust waiver-request language include: **DoI** OS-2012-00113, OS-2012-00124, OS-2012-00172, FWS-2012-00380, BLM-2014-00004, BLM-2012-016, BLM: EFTS 2012-00264, CASO 2012-00278, NVSO 2012-00277; **NOAA** 2013-001089, 2013-000297, 2013-000298, 2010-0199, and "Peterson-Stocker letter" FOIA (August 6, 2012 request, no tracking number assigned, records produced); **DoL** (689053, 689056, 691856 (all from 2012)); **FERC** 14-10; **DoE** HQ-2010-01442-F, 2010-00825-F, HQ-2011-01846, HQ-2012-00351-F, HQ-2014-00161-F, HQ-2010-0096-F, GO-09-060, GO-12-185, HQ-2012-00707-F; **NSF** (10-141); **OSTP** 12-21, 12-43, 12-45, 14-02.; **EPA** HQ-2013-000606, HQ-FOI-01087-12, HQ-2013-001343, R6-2013-00361, R6-2013-00362, R6-2013-00363, HQ-FOI-01312-10, R9-2013-007631, HQ-FOI-01268-12, HQ-FOI-01269, HQ-FOI-01270-12, HQ-2014-006434. These latter examples involve EPA either waiving fees, not addressing the fee issue, or denying fee waiver but dropping that posture when requester sued.

or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience.'" *Id.* at 11. *See also, Media Access Project v. FCC*, 883 F.2d 1063, 1065 (D.C. Cir. 1989).

For these reasons, requester qualifies as a "representative[] of the news media" under the statutory definition, because it routinely gathers information of interest to the public, uses editorial skills to turn it into distinct work, and distributes that work to the public. *See EPIC v. Dep't of Defense*, 241 F. Supp. 2d 5 (D.D.C. 2003)(non-profit organization that gathered information and published it in newsletters and otherwise for general distribution qualified as representative of news media for purpose of limiting fees). Courts have reaffirmed that non-profit requesters who are not traditional news media outlets can qualify as representatives of the new media for purposes of the FOIA, particularly after the 2007 amendments to FOIA. *See ACLU of Washington v. U.S. Dep't of Justice*, No. C09-0642RSL, 2011, 2011 U.S. Dist. LEXIS 26047 at *32 (W.D. Wash. Mar. 10, 2011). *See also Serv. Women's Action Network v. DOD*, 2012 U.S. Dist. Lexis 45292 (D. Conn., Mar. 30, 2012).

Accordingly, any fees charged must be limited to duplication costs. The records requested are available electronically and are requested in electronic format, so there should be no costs.

## Conclusion

We expect the FERC to release within the statutory period of time all responsive records, withholding only segregable portions of any that might contain properly exempt information, and to provide information that may be withheld under FOIA's discretionary provisions, and otherwise proceed with a bias toward disclosure, consistent with the law's clear intent, judicial precedent affirming this bias, and former President Obama's directive to all federal agencies on January 26, 2009. Memo to the Heads of Exec. Offices and Agencies, Freedom of Information Act, 74 Fed. Reg. 4683 (Jan. 26, 2009)("The Freedom of Information Act should be administered with a clear presumption: in the face of doubt, openness prevails. The Government should not keep information confidential merely because public officials might be embarrassed by disclosure, or because of speculative or abstract fears.").

**We expect all aspects of this request including the search for responsive records be processed free from conflict of interest (i.e., the Commission should not simply rely upon a request of the party/ parties whose correspondence is at issue in the request what they might have that is responsive).**

We request the FERC to provide particularized assurance that it is reviewing some quantity of records with an eye toward production on some estimated schedule, so as to establish some reasonable belief that it is processing our request. 5 U.S.C.A. § 552(a)(6)(A)(i); see also *CREW v. FEC*. The FERC must at least inform us of the scope of potentially responsive records, including the scope of the records it plans to produce and the scope of documents that it plans to withhold under any FOIA exemptions; FOIA specifically requires the FERC to immediately notify IER with a particularized and substantive determination, and of its determination and its reasoning, as well as IER's right to appeal; further, FOIA's unusual circumstances safety valve to extend time to make a determination, and its exceptional

12

circumstances safety valve providing additional time for a diligent agency to complete its review of records, indicate that responsive documents must be collected, examined, and reviewed in order to constitute a determination. *See Citizens for Responsible Ethics in Washington v. Federal Election Commission*, 711 F.3d 180, 186 (D.C. Cir. 2013). *See also*, *Muttitt v. U.S. Central Command*, 813 F. Supp. 2d 221; 2011 U.S. Dist. LEXIS 110396 at *14 (D.D.C. Sept. 28, 2011)(addressing "the statutory requirement that [agencies] provide estimated dates of completion").

We request a rolling production of records, such that the agency furnishes records to my attention as soon as they are identified, preferably electronically, but as needed then to my attention, at the address below. We inform the FERC of our intention to protect our appellate rights on this matter at the earliest date should the FERC not comply with FOIA per, *e.g.*, *CREW v. Fed. Election Comm'n*, 711 F.3d 180 (D.C. Cir. 2013).

If you have any questions please do not hesitate to contact me. I look forward to your timely response.

Sincerely,

Thomas J. Pyle
tpyle@ierdc.org
202.621.2952

13

# **B**

## THE FITZPATRICK MATRIX

Hourly Rates ($) for Legal Fees for Complex Federal Litigation in the District of Columbia

| Years Exp. / Billing Yr. | 2013 | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 |
|---|---|---|---|---|---|---|---|---|---|---|
| 35+ | 535 | 563 | 591 | 619 | 647 | 675 | 703 | 731 | 736 | 760 |
| 34 | 534 | 562 | 590 | 618 | 646 | 674 | 702 | 729 | 734 | 758 |
| 33 | 532 | 560 | 588 | 616 | 644 | 672 | 700 | 728 | 733 | 757 |
| 32 | 530 | 558 | 586 | 614 | 642 | 670 | 698 | 726 | 730 | 754 |
| 31 | 527 | 555 | 583 | 611 | 639 | 667 | 695 | 723 | 728 | 752 |
| 30 | 524 | 552 | 580 | 608 | 636 | 664 | 692 | 720 | 725 | 749 |
| 29 | 521 | 549 | 577 | 605 | 633 | 661 | 689 | 717 | 721 | 745 |
| 28 | 517 | 545 | 573 | 601 | 629 | 657 | 685 | 713 | 717 | 741 |
| 27 | 512 | 540 | 568 | 596 | 624 | 652 | 680 | 708 | 713 | 736 |
| 26 | 508 | 536 | 564 | 592 | 620 | 648 | 676 | 704 | 708 | 731 |
| 25 | 502 | 530 | 558 | 586 | 614 | 642 | 670 | 698 | 703 | 726 |
| 24 | 497 | 525 | 553 | 581 | 609 | 637 | 665 | 693 | 697 | 720 |
| 23 | 491 | 519 | 547 | 575 | 603 | 630 | 658 | 686 | 691 | 714 |
| 22 | 484 | 512 | 540 | 568 | 596 | 624 | 652 | 680 | 684 | 707 |
| 21 | 477 | 505 | 533 | 561 | 589 | 617 | 645 | 673 | 677 | 699 |
| 20 | 470 | 498 | 526 | 553 | 581 | 609 | 637 | 665 | 670 | 692 |
| 19 | 462 | 490 | 518 | 546 | 574 | 602 | 630 | 658 | 662 | 684 |
| 18 | 453 | 481 | 509 | 537 | 565 | 593 | 621 | 649 | 653 | 675 |
| 17 | 445 | 473 | 500 | 528 | 556 | 584 | 612 | 640 | 645 | 666 |
| 16 | 435 | 463 | 491 | 519 | 547 | 575 | 603 | 631 | 635 | 656 |
| 15 | 426 | 454 | 482 | 510 | 538 | 566 | 593 | 621 | 626 | 647 |
| 14 | 416 | 443 | 471 | 499 | 527 | 555 | 583 | 611 | 615 | 635 |
| 13 | 405 | 433 | 461 | 489 | 517 | 545 | 573 | 601 | 605 | 625 |
| 12 | 394 | 422 | 450 | 478 | 506 | 534 | 562 | 590 | 594 | 614 |
| 11 | 382 | 410 | 438 | 466 | 494 | 522 | 550 | 578 | 582 | 601 |
| 10 | 371 | 399 | 427 | 455 | 483 | 510 | 538 | 566 | 570 | 589 |
| 9 | 358 | 386 | 414 | 442 | 470 | 498 | 526 | 554 | 558 | 576 |
| 8 | 345 | 373 | 401 | 429 | 457 | 485 | 513 | 541 | 545 | 563 |
| 7 | 332 | 360 | 388 | 416 | 444 | 472 | 500 | 528 | 532 | 550 |
| 6 | 319 | 347 | 375 | 403 | 431 | 458 | 486 | 514 | 518 | 535 |
| 5 | 305 | 332 | 360 | 388 | 416 | 444 | 472 | 500 | 504 | 521 |
| 4 | 290 | 318 | 346 | 374 | 402 | 430 | 458 | 486 | 489 | 505 |
| 3 | 275 | 303 | 331 | 359 | 387 | 415 | 443 | 471 | 474 | 490 |
| 2 | 260 | 287 | 315 | 343 | 371 | 399 | 427 | 455 | 458 | 473 |
| 1 | 244 | 272 | 300 | 328 | 356 | 384 | 412 | 439 | 442 | 457 |
| 0 | 227 | 255 | 283 | 311 | 339 | 367 | 395 | 423 | 426 | 440 |
| P* | 130 | 140 | 150 | 160 | 169 | 179 | 189 | 199 | 200 | 207 |

* = Paralegals/Law Clerks

*Published by the U.S. Attorney's Office for the District of Columbia, Civil Division*

### Explanatory Notes

1.  This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared to assist with resolving requests for attorney's fees in complex civil cases in District of Columbia federal courts handled by the Civil Division of the United States Attorney's Office for the District of Columbia. It has been developed to provide "a reliable assessment of fees charged for complex federal litigation in the District [of Columbia]," as the United States Court of Appeals for the District of Columbia Circuit urged. *DL v. District of Columbia*, 924 F.3d 585, 595 (D.C. Cir. 2019). The matrix has not been adopted by the Department of Justice generally for use outside the District of Columbia, nor has it been adopted by other Department of Justice components.

2.  The matrix is intended for use in cases in which a fee-shifting statute permits the prevailing party to recover "reasonable" attorney's fees. *E.g.,* 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412(b). A "reasonable fee" is a fee that is sufficient to attract an adequate supply of capable counsel for meritorious cases. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). The matrix is not intended for use in cases in which the hourly rate is limited by statute. *E.g.*, 28 U.S.C. § 2412(d).

3.  For matters in which a prevailing party agrees to payment pursuant to this fee matrix, the United States Attorney's Office will not request that a prevailing party offer the additional evidence that the law otherwise requires. *See, e.g., Eley v. District of Columbia*, 793 F.3d 97, 104 (D.C. Cir. 2015) (quoting *Covington v. District of Columbia*, 57 F.3d 1101, 1109 (D.C. Cir. 1995) (requiring "evidence that [the] 'requested rates are in line with those prevailing in the community for similar services'")).

4.  The years in the column on the left refer to an attorney's years of experience practicing law. Normally, an attorney's experience will be calculated based on the number of years since an attorney graduated from law school. If the year of law school graduation is unavailable, the year of bar passage should be used instead. Thus, an attorney who graduated from law school in the same year as the work for which compensation is sought has 0 years of experience. For all work beginning on January 1 of the calendar year following graduation (or bar admission), the attorney will have 1 year of experience. (For example, an attorney who graduated from law school on May 30 will have 0 years of experience until December 31 of that same calendar year. As of January 1, all work charged will be computed as performed by an attorney with 1 year of experience.) Adjustments may be necessary if an attorney did not follow a typical career progression or was effectively performing law clerk work. *See, e.g., EPIC v. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61, 70-71 (D.D.C. 2013) (attorney not admitted to bar compensated at "Paralegals & Law Clerks" rate).

5.  The data for this matrix was gathered from the dockets of cases litigated in the U.S. District Court for the District of Columbia using the following search in July 2020 in Bloomberg Law: keywords ("motion n/5 fees AND attorney!") + filing type ("brief," "motion," or "order") + date ("May 31, 2013 – May 31, 2020" under "Entries (Docket and Documents)"). This returned a list of 781 cases. Of those, cases were excluded if there was no motion for fees filed, the motions for fees lacked necessary information, or the motions involved fees not based on hourly rates, involved rates explicitly or implicitly based on an existing fee matrix, involved rates explicitly or implicitly subject to statutory fee caps (e.g., cases subject to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)), or used lower rates prescribed by case law (*e.g., Eley*, 793 F.3d at 105 (Individuals with Disabilities in Education Act

cases)).  After these excisions, 86 cases, many of which included data for multiple billers (and 2 of which only provided hourly rate data for paralegals), remained.

6.  The cases used to generate this matrix constitute complex federal litigation—which caselaw establishes as encompassing a broad range of matters tried in federal court.  *E.g.*, *Reed v. District of Columbia*, 843 F.3d 517, 527-29 (D.C. Cir. 2016) (Tatel, J., concurring) (noting that cases arising under the Freedom of Information Act, Title VII, the Americans with Disabilities Act, Constitutional Amendments, antitrust statutes, and others have been deemed complex, and even "relatively small" cases can constitute complex federal litigation, as they too require "specialized legal skills" and can involve "complex organizations," such as "large companies"); *Miller v. Holzmann*, 575 F. Supp. 2d 2, 14-16, 17 (D.D.C. 2008) (prevailing market rates for complex federal litigation should be determined by looking to "a diverse range of cases").  That the attorneys handling these cases asked the court to award the specified rates itself demonstrates that the rates were "'adequate to attract competent counsel, [while] not produc[ing] windfalls to attorneys.'"  *West v. Potter*, 717 F.3d 1030, 1033 (D.C. Cir. 2013) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).  As a consequence, the resulting analysis yields the "prevailing market rate[] in the relevant community" for complex litigation undertaken in federal courts in the District of Columbia.  *See Blum*, 465 U.S. at 895.

7.  From these 86 complex federal cases, the following information was recorded for 2013 and beyond: hourly rate, the calendar year the rate was charged, and the number of years the lawyer was out of law school when the rate was charged (or, if law school graduation year was unavailable, years since bar passage), as defined above.  If the graduation or bar passage year was not stated in a motion or its exhibits, then the lawyer's biography was researched on the internet.  Although preexisting fee matrices for the District of Columbia provide for mid-year rate changes, very few lawyers in the data submitted rates that changed within a calendar year.  For this reason, the matrix was modeled using one rate for each calendar year.  On the occasions when a lawyer expressed an hourly rate as a range or indicated the rate had increased during the year, the midpoint of the two rates was recorded for that lawyer-year.

8.  The matrix of attorney rates is based on 675 lawyer-year data points (one data point for each year in which a lawyer charged an hourly rate) from 419 unique lawyers from 84 unique cases.  The lawyer-year data points spanned from years 2013 to 2020, from $100 to $1250, and from less than one year of experience to 58 years.

9.  Paralegal/law clerk rates were also recorded.  The following titles in the fee motions were included in the paralegal/law clerk data: law clerk, legal assistant, paralegal, senior legal assistant, senior paralegal, and student clerk.  The paralegal/law clerk row is based on 108 paralegal-year data points from 42 unique cases.  They spanned from 2013 to 2019 and from $60 to $290.  (It is unclear how many unique persons are in the 108 data points because paralegals were not always identified by name.)

10. The matrix was created with separate regressions for the lawyer data and the paralegal data.  For the paralegal data, simple linear least-squares regression was used with the dependent variable hourly rate and the independent variable the year the rate was charged subtracted from 2013; years were

combined into one variable and subtracted from 2013 rather than modeled as separate indicator variables to constrain annual inflation to a constant, positive number.  The resulting regression formula was rate = 129.8789 + 9.902107 * (year-2013).  For the lawyer data, least-squares regression was used with the dependent variable hourly rate and independent variables the year the rate was charged and the number of years of experience of the lawyer when the rate was charged.  The year the rate was charged was subtracted from 2013 and modeled linearly as with the paralegal data.  The number of years out of law school (or since year of bar passage) was modeled with both linear and squared terms, as is common in labor economics to account for non-linear wage growth (e.g., faster growth earlier in one's career than at the end of one's career).  *See, e.g.*, Jacob Mincer, *Schooling, Experience, and Earnings* (1974).  The resulting regression formula was rate = 227.319 + 16.54492 * experience - 0.2216217 * experience ^ 2 + 27.97634 * (year-2013).  Regressions were also run with log transformed rates and with a random-effect model (to account for several lawyers appearing more than once in the data), but both alternatives resulted in mostly lower rates than those reflected here; in order to minimize fee disputes, these models were therefore rejected in favor of the more generous untransformed, fixed-effect model.  Rates from one case comprised 20% of the data; the regression was also run without that case, but the resulting rates were mostly lower and therefore rejected, again to minimize fee disputes.

11. The data collected for this matrix runs through 2020.  To generate rates in 2021, an inflation adjustment (rounded to the nearest whole dollar) was added.  The United States Attorney's Office determined that, because courts and many parties have employed the legal services index of the Consumer Price Index to adjust attorney hourly rates for inflation, this matrix will do likewise.  *E.g.*, *Salazar v. District of Columbia*, 809 F.3d 58, 64-65 (D.C. Cir. 2015); *Eley*, 793 F.3d at 101-02; *DL*, 924 F.3d at 589-90.

12. This matrix was researched and prepared by Brian Fitzpatrick, the Milton R. Underwood Chair in Free Enterprise and Professor of Law at Vanderbilt Law School, with the help of his students.

Table 1

| | | | | | | |
|---|---|---|---|---|---|---|
| **10/3/2022** | Draft complaint, discuss w MDH | 1.2 | | | | |
| **10/04/2023** | Rvw, edit oppo to motion to enlarge | 0.4 | | | | |
| **12/13/2024** | Rvw draft JSR, edit same, correspond w MDH re same (3) | 0.3 | | | | |
| **1/16/2023** | Rvw production, Cf past FERC positions, note to MDH re next steps and redactions | 0.4 | | | | |
| **1/19/2023** | Rvw draft JSR, Correspond w MDH re next steps, JSR wording | 0.2 | | | | |
| **1/23/2023** | Call, email w MDH re approach, with now 4 of 9 docs released in -3419, DF counsel position | 0.2 | | | | |
| **1/26/23** | Rvw, edit draft JSR, correspond w MDH re same | 0.2 | | | | |
| **3/6/2023** | Compose note to DF counsel re next steps/challenges to Draft Vaughn/ sufficiency of same | 0.2 | | | | |
| **8/7/24** | Affidavit re fees | 0.3 | | | | |
| **8/7/24** | Rvw, edit fees memo | 0.4 | | | | |
| | | | 3.8 | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |